UNITED STATES

v.

**Larry D. AARON, 434 82 8108, Private (E-1), U. S. Marine Corps.**

**NCM 76 1856.**

U. S. Navy Court of Military Review.

29 Nov. 1976.

CAPT W. D. Blalock, USMCR, Appellate Government Counsel.

Before CEDARBURG, BAUM and GLASGOW, JJ.

GLASGOW, Judge:

The appellant was arraigned on four specifications alleging violations of Article 128, UCMJ, 10 U.S.C. § 928, viz: Specification 1, striking with a means likely to produce grievous bodily harm, and Specifications 2, 3 and 4, unlawfully striking. He entered a plea of not guilty, was found guilty of Specification 1 and guilty of the lesser included offense of simple assault under Specification 2. He was found not guilty of the third and fourth specifications. The sentence adjudged by a special court-martial, with members, to a bad conduct discharge, confinement at hard labor for four months and forfeiture of $246.00 pay per month for four months has been approved on review below, except the supervisory authority reduced the rate of forfeiture to the legal maximum of $240.00 per month.

The appellant assigns the following as errors:

I. THE MILITARY JUDGE ERRONEOUSLY FAILED TO EXCUSE CAPTAIN W, A MEMBER OF THE COURT WHO ACTED AS A PROSECUTION WITNESS AND WHO HAD, INDEPENDENT KNOWLEDGE OF APPELLANT'S IDENTITY, CLOTHING, AND HABITS.

II. TRIAL COUNSEL EMPLOYED IMPROPER ARGUMENT BEFORE THE COURT MEMBERS BY ADVOCATING A SENTENCE BASED UPON DETERRENCE OF OTHER SERVICE MEMBERS.

In view of the action required on the first assignment we will not discuss the second.

LT H. Glenn Scammel, JAGC, USNR, Appellate Defense Counsel.

I

The prosecution introduced evidence to show that the man assaulting other Marines

wore red pants, a red and white flowered shirt and a black turban type headdress and that the appellant was wearing that unusual type clothing at the time and place of the crimes. The president then told the trial judge that one of the members had a question. Upon being asked by the judge if it was for one of the witnesses the member, Captain W., stated:

"No. It's not towards any witness. What I'd like to do is bring it to the court's attention that after the last two witnesses have described their testimony, I have seen the accused in town in the garb described; the turban, the pants, and I have recognized him in town like this." (R. 60).

After the trial judge excused the other members Captain W. stated:

"On two separate occasions, since I've only been here [Okinawa, Japan] about two and a half to three months, I've seen the accused in the dress of a turban, a black turban, the only one I've ever seen in town, a tight fitting black turban and particularly those trousers, in the vicinity of the Gypsy Club, and I can make a positive identification of that individual in that outfit." (R. 60).

In response to questions on *voir dire* by counsel for both sides Captain W. stated that he had seen the appellant in the same vicinity but at times different from that alleged in the offenses then on trial, and that his knowledge of the appellant's dress would have no effect upon his decision in the case "unless that garb is positive identification of that individual". Trial counsel did not challenge Captain W. and defense counsel affirmatively waived his right to such challenge. The trial judge ruled Captain W. qualified to continue as a member of the court in the following colloquy:

"MJ: Neither side has completed the presentation of their cases in chief. Because you have recalled seeing the accused before dressed in that clothing similar to what has been described here today, do you believe that you have in any way formed an opinion at this point in your mind as to his guilty or innocence?

MEMBER: No, Your Honor, not to his guilt or innocence. The only reason I brought it up was the fact that if this was a method of positive identification of the individual, linking up to the accused's crime, then I could very easily make that positive identification in my own mind because I have in fact seen him in that garb and he's the only one I've ever seen in that garb in town, on two separate occasions.

TC: Were those two separate days?

MEMBER: Two different days, that's correct.

TC: Two different days?

MEMBER: Two different days, that's correct.

MJ: It is my belief that the captain is not disqualified from sitting as a member of the court, since there is no challenge from either side.

You may resume your own seat." (R. 62).

The appellant now contends that Captain W. became a witness for the prosecution, citing *United States v. Ivey*, 37 C.M.R. 626 (A.B.R.1967). In *Ivey* the accused testified that he thought there was only one round in the Luger-type weapon, that his girl friend, the victim, must have inserted a second round in the clip while he was out of the room and that one could not detect whether there was one or two rounds in the clip by visual inspection. Defense counsel also demonstrated to the court that a person "could not" determine whether there was one or two rounds in the clip by visual inspection. The court member, Captain Sperman, a gun collector, questioned the accused on the operation of the death weapon. Captain Sperman then demonstrated to the court members that a person could, in fact, determine whether there was one or two rounds in the clip from a visual inspection. The Army Board of Review held that Captain Sperman had become a witness for the prosecution and should have been excused forthwith, citing Article 25(d), UCMJ, and MCM, 1951, par. 63. In *Ivey* the entire proceeding took place in the presence of the other court members.

In the case *sub judice*, the court member in question, Captain W., made all statements pertinent to the issue except the one first quoted above, outside the hearing of the other court members. While he was a potential witness, we find that he did not become a witness for the prosecution.

■ Captain W. brought to the trial court's attention the fact that his decision would be affected if the appellant's unusual clothing became the method of positive identification. The appellant's unusual clothing was the method of his identification and Captain W. was subject to challenge for cause under MCM, 1969 (Rev.), par. 62f(13), by reason of "any other facts indicating that he should not sit as a member . . . " The Manual provides for the following procedure upon disclosure of any grounds for challenge:

"If it appears from any disclosure that the military judge or a member is subject to challenge on any ground stated in clauses (1) through (8) of 62f, and the fact is not disputed, the military judge or member will be excused forthwith. If the military judge is excused or the court is reduced below a quorum, the court will adjourn pending detail of a new military judge or additional members. Except as just stated, no action is required under this subparagraph (62c) with respect to any disclosure that may be made; but proceedings under this paragraph are without prejudice to any rights of challenge on either side." MCM, 1969 (Rev.), par. 62c.

■ It is apparent from trial judge's ruling that he considered the "no action is required" provision of said paragraph 62c to mean that he could not excuse a member on grounds stated in clauses 9 through 13 of said paragraph 62f, unless a challenge had been made by counsel. We do not believe that said paragraph 62c should be so restrictively construed. In the usual case trial judge's action would have been satisfactory, but this is not the usual case. Here there is ample evidence to establish that a man dressed in red slacks, a red and white flowered shirt and a black turban type head-dress committed the principal offense, the assault upon Staff Sergeant P., Specification 1, and that the appellant was wearing that unusual dress. However, all the eyewitnesses to the assault depended on the unusual dress to identify the appellant as the assailant.

Staff Sergeant P. and Lance Corporal G., victims of the two assaults found proven, could not identify the assailant. While Private First Class M. identified the appellant in court as the assailant of Lance Corporal G., he did not see the assault of Staff Sergeant P. and could not tie the appellant to that assault except by circumstantial evidence. Lieutenant B. and Lance Corporal R. saw the assault upon Staff Sergeant P. by the man in the unusual dress, but neither could identify the appellant in court. Gunnery Sergeant L. identified the appellant as the man wearing the unusual dress and placed him near the scene of the crimes, but he did not see the assaults. Lance Corporal C. saw the assault upon both Staff Sergeant P. and Lance Corporal G. and identified the appellant in court but he did not know the appellant prior to the assaults and his testimony shows that he had to return to the area of the crime with Lieutenant Colonel S. to find and identify the appellant. While the record is unclear, it appears that Lance Corporal C. was able to identify the appellant only by his unusual dress. The appellant took the witness stand in his own defense, admitted assaulting "a Puerto Rican and some of his friends" but stated that he did not remember seeing Staff Sergeant P. or Lance Corporal G. and did not admit assaulting them. Thus, the identity of the appellant as the assailant depends almost entirely upon his unusual dress. Captain W.'s prior knowledge of appellant's unusual dress must be presumed to have had an effect upon his decision in the case.

■ When Captain W. advised the court of this fact the trial counsel might well have challenged him for cause. When this disclosure was made by the court member trial counsel was in a better position than the trial judge to understand the ramifica-

**1056**

tion of the member's prior knowledge. It behooves trial counsel as well as trial judge to assure that the court members are neither biased nor fail to appear impartial, and that the accused has a fair trial.

 In *United States v. Freeman*, 19 U.S.C.M.A. 572, 42 C.M.R. 174 (1970), the Court of Military Appeals reversed this Court's decision where a court member had stated that he had information about the accused that would "prevent him from being fair and impartial in this case", even though the challenge for cause was sustained. The information imparted to the other members during the discussion of the motion for mistrial and the *voir dire* examinations presented "too strong a risk that the court members would be influenced against the accused, despite instructions to determine the issues and the sentence without regard to the 'facts, opinions or circumstances revealed' during the *voir dire* of the court members". *Id.* 573. In *Freeman* a motion for a mistrial had been denied. In the case *sub judice* no such motion was made. However in this case there was no instruction given to the court members to disregard the statement of Captain W. made before them, nor was Captain W., who continued to serve as a member, instructed to make his decision at trial without regard to his information gained outside the courtroom. Had Captain W. been excused at the time he disclosed his prior knowledge of the appellant and had the other members been instructed to disregard his short statement made before them, it would appear that the appellant could have had a fair trial. *United States v. Mansell*, 8 U.S.C.M.A. 153, 23 C.M.R. 377 (1957); *United States v. Waldron*, 15 U.S.C.M.A. 628, 36 C.M.R. 126 (1966).

Under the circumstances of this case, where the identification of the appellant as the assailant depended upon unusual clothing worn by the assailant, the only clothing of that sort seen in the area, Okinawa, and where the court member, who continued to serve, stated that under such circumstances his decisions could be affected by his prior knowledge of the appellant and his unusual dress, there is a fair risk that the appellant did not receive a fair trial.

Accordingly, the findings and sentence are set aside and the case is returned to the Judge Advocate General. A rehearing may be ordered.

Chief Judge CEDARBURG and Judge BAUM concur.