**UNITED STATES**

v.

**Heriberto PEREZ, Jr., 310 94 6497 Lance Corporal (E–3), U.S. Marine Corps.**

**No. NMCM 91 3021.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 11 July 1991.

Decided 31 March 1993.

LT Mary Anne Razim, JAGC, USNR, Appellate Defense Counsel.

LT T.S. Susanin, JAGC, USNR, Appellate Government Counsel.

Before JONES, C.J., and REED and LAWRENCE, JJ.

REED, Judge:

We have examined the record of trial, the assignment of error,[1] and the Government's reply thereto, and we have concluded that the military judge erred by refusing to grant appellant's challenges for cause to two of the court members.

Contrary to his pleas, appellant was convicted by a special court-martial, composed of officer and enlisted members, of one specification of willfully striking a superior commissioned officer by kicking him in the head, a violation of Article 90, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 890. He was sentenced to a bad-conduct discharge, forfeitures of $502.00 pay per month for six months, confinement for six months, and reduction to pay grade E–1. The convening authority approved the sentence as adjudged.

The charge against appellant resulted from an incident which occurred at a battalion field meet at Camp Hansen, Okinawa, Japan, when a group of Marines chased the victim, a chief warrant officer, and "stacked" him.[2] As the Marines began to unpile, appellant allegedly approached the victim, who was still on the ground, and kicked him in the head. The victim saw appellant trying to move quickly away from the pile, chased him, and pinned him to the ground.

At trial, three of the officers detailed as court members stated during voir dire that they observed the stacking. Captain Babbie, during group voir dire, disclosed that he was present where this incident occurred and saw events leading up to the alleged offense. He did not see the act itself but "saw immediately after the results of what happened." During individual voir dire, Captain Babbie indicated that after the "stacking" incident he spoke with the victim who reported to him that "[t]hat guy gave me a cheap shot." Based on this conversation with the victim, Captain Babbie was successfully challenged for cause.

Lieutenant Pellegrino was another member who witnessed the "stacking" incident. A portion of the voir dire of this member follows:

TC: Now what exactly could you see of the action that was going on there?

MEMBER (2dLT PELLEGRINO): I saw several other stackings that went on; and then in Warrant Officer Warfield's I PERSONALLY VIEWED THE "STACKING" OF CHIEF WARRANT OFFICER WARFIELD.

---

1. THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S CHALLENGES OF TWO COURT MEMBERS WHO WERE PRESENT AT THE FIELD MEET AND WHO BOTH

2. A stacking occurs when a group of people pile on top of a person.

saw the people piling on and then I turned to speak to someone else—I'm not sure who it was—and then when I turned back, all I saw was everyone standing up and getting away and Warrant Officer Warfield pushing someone to the ground and then both of them standing up and they both walked away.

TC: Now did you hear anything that went on over there? You were pretty close.

MEMBER (2dLT PELLEGRINO): Just a general shouting or whatever may have been involved in the act itself. I don't know any distinctive voices that I can remember now or anything that was said by any individual in the stacking itself.

TC: What was your opinion of what went on there?

. . . . .

MEMBER (2dLT PELLEGRINO): Of the whole general idea of stacking I did not view it as a really serious event until perhaps later when I had heard that someone had struck Warrant Officer Warfield and it was like, "Hmm," or the inherent danger of several people jumping on someone else. I didn't view it as extremely dangerous at all.

TC: From who (sic) did you hear that someone had struck Warrant Officer Warfield?

MEMBER (2dLT PELLEGRINO): I can't remember any particular name. I would say that most of the people in the Battalion had heard that someone had perhaps struck Warrant Officer Warfield because of Warrant Officer Warfield's actions later. He was highly upset because of the action that someone had taken because he was visibly angry when he got—when he was standing after the stacking was done, he was visibly angry at someone;

and so I would say, rumor-mill or what have it, that it was known that someone may have struck Warrant Officer Warfield in the stacking.

. . . . .

. . . I had seen that Warrant Officer Warfield was visibly angry after the stacking and so I had assumed that something had went awry, but it had probably been several days before rumors got back to me, especially as an OIC of a section, before I actually heard someone say something.

DC: You said you were about 20 feet away when the stacking occurred, did you ever get closer than 20 feet?

MEMBER (2dLT PELLEGRINO): No, Sir.

 Trial defense counsel's challenge for cause of this witness was denied.[3] We believe this was an abuse of discretion. *See United States v. White*, 36 M.J. 284 (C.M.A.1993). Rule for Courts–Martial (R.C.M.) 912, Manual for Courts–Martial (MCM), United States, 1984, indicates that a member shall be excused for cause whenever it appears that the member will be a witness in the court-martial. We interpret this prohibition to include a potential witness, such as Lt Pellegrino, who is an eyewitness to the event itself which results in the offenses for which the accused is charged.[4] *Accord United States v. Aaron*, 1 M.J. 1052 (N.C.M.R.1976).

The legitimacy of the court-martial jury of superiors is predicated on and justified by the unique requirement for courts-martial to provide both a *fair and impartial forum* for resolving criminal misconduct and to foster good order and discipline in the armed forces.

---

**3.** Trial defense counsel preserved the error for review, after using his peremptory challenge on this witness, by noting he would have used his peremptory against another witness who had also witnessed this incident if his challenge for cause had been granted. *See* Rule for Courts–Martial (R.C.M.) 912(f)(4), Manual for Courts–Martial (MCM), United States, 1984.

**4.** It is not every potential witness who is disqualified. For instance, knowledge of an undis-

puted fact or facts merely collateral or incidental to the act charged will not render incompetent a juror who disclaims any opinion on the merits of the case. *See Kunk v. Howell,* 40 Tenn.App. 183, 289 S.W.2d 874 (Tenn.Ct.App. 1956). In the present case the disqualification occurs because of the intimate knowledge the witness had of the circumstances surrounding the activity that led to the charged misconduct. *United States v. Coffin,* 25 M.J. 32 (C.M.A.1987).

*United States v. Glenn,* 25 M.J. 278, 279 (C.M.A.1987), (citing with approval *United States v. Moyar,* 24 M.J. 635, 638 (A.C.M.R. 1987)) (emphasis added). We do not believe that a member with the knowledge this one had, despite his assertions to the contrary, could still be a "fair and impartial" trier of the facts.[5]

■ We reiterate once again that since the military defendant has only a single peremptory challenge, Article 41(b), UCMJ, 10 U.S.C. § 841(b), challenges for cause should be liberally granted. *White; United States v. Smart,* 21 M.J. 15 (C.M.A. 1985).

■ Similarly, Lt Newman, another member whose challenge for cause was also rejected by the military judge, witnessed the "stacking" incident from about thirty yards away. Although she saw the stacking, she did not witness the kicking, nor the later chase of the accused by the victim warrant officer. Nevertheless, she did remark immediately after the incident: "Did you see that? I can't believe that just happened." Our comments regarding Lt Pellegrino apply equally to this member. *See United States v. Coffin,* 25 M.J. 32 (C.M.A.1987).

■ Of equal concern to us is also the dictate contained in the Manual for Courts-Martial that a person *"shall"* be excused for cause whenever it *appears* that the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." R.C.M. 912(f)(1)(N) (emphasis added). Clearly, the perception to the public at large and other military members, as well as the accused, would be the unfairness of a proceeding where· a witness to an incident sits as a member in judgment of the person charged criminally as the result of such an incident.

Accordingly, the findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge JONES and Judge LAWRENCE concur.

---

5. We believe that any such member could not help but compare his recollection of what occurred to that of other witnesses and either agree or disagree with those witnesses' perceptions based on the member's own recollections. Such biases or prejudices would prevent a member from being fair and impartial to the extent required by law. There is also concern that a witness' testimony will refresh the member's memory of aspects of the event the member could not previously remember when questioned during voir dire. The member could then be placed in the untenable position during a trial on the merits of reinforcing or discrediting the witness' testimony depending on the member's recollection of what occurred.