## BRADLEY COUNTY FARM BUREAU v. EPPERSON.—73 S. W. (2d) 1116.

Eastern Section. February 20, 1934.

Petition for Certiorari Overruled by Supreme Court, May 19, 1934.

Shepherd, Carden, Curry & Levine, of Chattanooga, and George E. Westerberg, of Cleveland, for plaintiff in error.

D. Sullins Stuart and J. Y. Elliott, of Cleveland, for defendant in error.

THOMPSON, J. The plaintiff below, T. E. Epperson, has recovered verdict and judgment for $2,000 and costs, against the defendant below on account of the alleged burning of plaintiff's barn; plaintiff's contention being that said barn was negligently set fire to by sparks from the defendant's feed grinding machine which was grinding feed for plaintiff in said barn. The defendant has appealed to this court, and has assigned errors, the first three of which make the question that there was no material evidence to support the verdict and judgment.

The plaintiff owned a farm in Bradley County upon which he had a frame barn 114 feet long and 30 feet wide, extending generally east and west. There was a hallway 12 feet wide extending through the barn from north to south. There was another hallway 10 feet wide extending through the barn from the east end to the first-mentioned hallway, but no further. The barn was on a hillside; the ground and floor at the east end being about 8 feet lower than the ground and floor at the west end. There was a loft in the barn extending from the 12-foot hallway to the east end. The floor of this loft was about 7 feet higher than the floor or ground at the east side of said 12-foot hallway. In the loft close to the 12-foot hallway the plaintiff had a quantity of corn stalk stored. In the loft and at the east end the plaintiff had a great many bales of straw stored. This straw extended close to the roof at the east end. In the east end of the loft and just under the roof there was a window or opening about 2½ feet wide and 3 or 4 feet long.

The defendant owned and operated a feed grinding machine which he would take to the barns of the various farmers in Bradley county and with which he would grind and sack their feed for compensation.

We think it here proper to describe the grinder. It was an ordinary automobile truck. Back of the cab and on the body of the truck there was an ordinary four-cylinder or four-cycle gasoline engine similar to any other four-cycle automobile or tractor engine, except that the exhaust pipe extended straight upward through the center of the hood about 12 inches. This engine supplied the motive power for the other machinery (also on the body of the truck) which did the grinding. As originally constructed and delivered to the defendant, this engine had a "muffler" on the exhaust pipe which made it impossible for sparks or flames to come out, even though the engine was not operating properly and was "missing" and "backfiring." This "muffler" was especially designed, as was the engine itself, so that it would be safe to operate the grinder in barns and other places where there were inflammable materials.

Without the "muffler" there was great likelihood of sparks and flame coming out of the exhaust pipe; particularly if the engine was not running properly or was "missing" or "backfiring." The principle is that when a four-cycle engine "misses," that is the gasoline mixture in one of the cylinders fails to explode, it passes into the exhaust pipe and is there exploded by the exhaust heat and fire from the explosion of the mixture in the next cylinder. The result is that unless there is a proper "muffler" on the exhaust the fire, flames and sparks pass out into the air.

The plaintiff's evidence was to the following effect:

On December 1, 1931, plaintiff made an agreement over the telephone with one of defendant's officials that defendant would send the grinder to plaintiff's farm and grind his corn stalks and feed for the price of 20 cents per 100 pounds.

About 8 o'clock on the morning of December 2, 1931, two of defendant's employees, Earl Haun and Phillip McConnel, drove the grinder to plaintiff's farm and to a point near his barn. Plaintiff was not at the barn at the time, but went there a few minutes later and showed Haun (who was in charge of the grinder, McConnel being his assistant) where the corn stalks were which he desired to be ground. These stalks, as has been stated, were in the loft and close to the intersection of the two above-mentioned hallways.

Haun backed the grinder into the 12-foot hallway from the south and stopped it practically at the intersection of the two hallways. The back end of the grinder was probably 3 or 4 feet north of the north wall of the 10-foot hallway, if extended. Having reached this point, Haun shut off the engine which propelled the truck.

Plaintiff and one of his hands went into the loft so that the hand could pass the stalks to plaintiff and so that plaintiff could pass them to Haun, who was standing on the ground and in a position to place the stalks into the grinding machine.

Haun started the engine which operated the grinding machinery. However, it did not run smoothly and was "missing" and "popping," indicating that it was "backfiring," although the noise seems not to have been very loud. Haun shut the engine off and worked on it a few minutes. He then started it again, but it still did not run smoothly and continued to "miss" and make a "popping" sound. He ground one bunch of corn stalks, but when plaintiff handed him another bunch or was about to do so, he again shut the engine off. Altogether the engine was operated in the barn between five and ten minutes, and, as started, one bunch of stalks was ground.

As soon as Haun stopped the engine the last time, he started the truck engine and drove the grinder out of the barn. Within a minute and a half thereafter it was discovered that the straw in the east end of the loft at or very near the above-described window or opening was on fire and blazing; the flames going out said window or opening. The point where the straw caught fire was 30 feet from the grinder engine and only a few feet higher than its exhaust pipe. There was no way of putting out the fire and the barn and part of its contents were completely destroyed.

While the grinder engine was being operated in the barn there was no "muffler" on the exhaust pipe, which was a straight open pipe extending upward about 12 inches above the hood of the engine and almost up to a level with the floor of the loft. There was considerable draft in the barn, and the breeze was somewhat from the north. The window or opening at or near the top of the east end of the loft had a tendency to draw any sparks which may have come out of the exhaust pipe towards it and the straw where the fire started.

Neither the plaintiff nor his hand who was in the loft with him had smoked in the barn that morning. Neither had plaintiff's employee, Varnell, who was around and through the barn (but not in the loft) shortly before the fire. We pause here to state that Varnell would not testify positively that he had not smoked his pipe in or near the barn that morning, but he did testify positively that if he had smoked his pipe he had held his thumb over its bowl so that no fire could get out of it.

Plaintiff, who was in better position to see them than any one else, did not see any sparks come out of the exhaust pipe, but it was light in the barn where the grinder was standing, and therefore practically impossible for him to have seen them; and he did not realize that there was danger of fire and was not looking for them.

The foregoing was the substance of the testimony of plaintiff and his witnesses. It was contradicted to a large extent by defendant's

evidence, which was to the effect that the original muffler was on the exhaust pipe, that the only trouble with the engine was that the set screw which held the throttle open had worked loose, thus causing the engine to fail to get enough gasoline to keep it running when a load was put on it by placing the stalks in the grinder, and that it therefore simply stopped when the stalks were put in, that it was not light enough in the barn to prevent the sparks from being seen if there had been any, and that both plaintiff, his hand and Varnell had smoked in the loft at the point where the fire started just before it was discovered.

The foregoing is merely a brief summary of the testimony, but under it we do not believe that it can be said that there was no material evidence to support the verdict and judgment, or that the jury had to speculate as to what caused the fire. We think that under the plaintiff's evidence the jury was entitled to conclude with reasonable certainty that the fire was caused by sparks from the exhaust which the negligence of the defendant's employees permitted to escape in the barn. The assignments making the question that there was no material evidence to support the verdict and judgment will therefore be overruled.

 The fourth assignment is that the verdict was contrary to the greater weight of the evidence. We of course cannot pass upon such an assignment.

 The fifth assignment is that the trial judge failed to perform his duty of acting as a thirteenth juror, etc. Other than the fact that he overruled the motion for a new trial, there is absolutely no showing in the record that the trial judge failed to perform his duty of passing upon the correctness of the verdict.

The seventh, eighth, and ninth assignments quote excerpts from the court's charge to the jury, and make the question that the allegations of the declaration were not sufficient to justify the court in charging the jury that if the defendant's employees operated the engine in the barn without the muffler on it they were guilty of negligence, etc. After reading the declaration, we are of the opinion that the allegations therein were sufficient for this purpose, and these assignments will be overruled.

 The tenth assignment is based upon the following excerpt from the charge:

"It is not necessary, gentlemen of the jury, for an eyewitness to have seen sparks coming from the gasoline engine and going into the hay or straw and setting the barn on fire. That is, it is not necessary that an eyewitness should have seen the sparks as they went along, if there were any sparks; but this may be shown by circumstances. You can take into consideration all the facts, all the circumstances surrounding them. In other words, a case may be made out by circumstantial evidence, civil cases as well as criminal

cases. But you cannot speculate on the matter; you must believe by a preponderance of the testimony that the barn was set on fire by the gasoline engine, but you can take into consideration all the facts and circumstances as they existed there on that occasion. On the proposition of circumstantial evidence; where circumstantial evidence is relied upon to make out a case, a theory cannot be said to be established by circumstantial evidence unless the facts and circumstances shown are not only consistent with the theory, but absolutely inconsistent with any other rational theory.''

The foregoing is the excerpt upon which the assignment is based, but immediately thereafter the court said to the jury:

"If you believe from the proof there were several ways the barn may have caught on fire, or could have caught on fire, then you cannot speculate on the matter, and it would be your duty to return a verdict in favor of the defendant. If you believe from a preponderance of the testimony, taking into consideration all the facts and circumstances, looking to the proposition of whether or not the gasoline engine was in the barn, whether or not there were any sparks coming from it, whether or not it got hot, just how the operators of the machine acted on that occasion, how soon after the machine was moved, if it was moved, that the fire broke out, what was said and done from the time the engine came there until the fire broke out—you look to all those matters and circumstances, and use your common sense and judgment, and say whether or not the barn caught fire from the gasoline engine. If you believe from a preponderance of the testimony there was no other way for it to catch fire except from the gasoline engine, it would be your duty to return a verdict in favor of the plaintiff. But as I have stated before to you, if there is shown by the circumstances, and there are other ways in which the barn may have caught on fire, if you believe that from the proof, then it would be your duty to find for the defendant.''

Immediately following this was the following excerpt which is made the basis of the sixth assignment of error:

"If you believe from a preponderance of the proof, gentlemen of the jury, that the fire started immediately after the engine was placed there, or immediately after it was moved, and there was no fire on the premises before, if you believe that from a preponderance of the testimony there was no other apparent cause for the fire, in that case, under those circumstances, the presumption would arise that the fire was caused by the engine, and such a presumption would put the burden of proof on the defendants. Those are matters for you to determine from the proof in the law suit.''

But the court continued as follows:

"It is for you to say from the preponderance of the testimony if the barn caught on fire from the gasoline engine throwing out sparks from it, or whether it caught on fire by somebody smoking there

or caught on fire some other way. It could have caught in several different ways, if you find that from the proof, there couldn't be any liability against the defendant, but you must believe from a preponderance of the testimony that the barn was set on fire by the engine of the defendant.''

Taken altogether, we do not think the foregoing is subject to the criticism made against it by defendant's counsel. We do not think it violated the rule that the mere fact of an injury does not raise a presumption of negligence. Neither do we think that it in effect instructed the jury that they could find, as a matter of fact, and in the absence of any evidence, that the defendant's employees were guilty of negligence, and that the fire originated therefrom, merely because they operated the grinding machine in the barn. Neither do we think it was subject to the criticism that it permitted the jury to base an inference upon an inference. We have considered the exceedingly skillful argument of defendants in connection with these two assignments of error, but are of the opinion that neither of them should be sustained.

 The remaining assignment is based upon the refusal to charge the jury, as requested by the defendant, as follows:

''Gentlemen of the jury, if you find from the evidence that the defendants used care and caution in purchasing this feed mill; that it was a modern machine, up to the standard of the art at the time of its purchase; that thereafter they used it in the regular course of their business for approximately six months prior to the date that plaintiff's barn was destroyed by fire, and that the engine of this feed mill of the defendants had never been known to discharge sparks or to start any fires prior to the one which plaintiff claims to have suffered, then the defendants have not been guilty of any negligence whatsoever, and your judgment must necessarily be for the defendants. In other words, it is necessary for the plaintiff to show, in order to recover damages from the defendants, that the defendants' engine or mill had a natural tendency to disseminate sparks; that this fact was known to the defendants, or could have been known to them by the exercise of reasonable care; that the engine actually disseminated sparks while it was in plaintiff's barn; and that the plaintiff's barn was set on fire by the sparks from the engine, and not from any other cause.''

It seems to us that under the foregoing request the jury would have been compelled to find in favor of the defendant even though its employees had been guilty of negligence which was the sole and proximate cause of the fire. We therefore think the trial court was right in not giving it.

It results that in our opinion there was no error in the judgment of the court below, and the same will be affirmed, with costs.