# CLEM KUNK et al., v. PATRICIA HOWELL. PATRICIA HOWELL et al. v. CLEM KUNK et al.— 289 S. W. (2d) 874.

Eastern Section. January 11, 1956.

Petition for Certiorari denied by Supreme Court, April 27, 1956.

Ogle & Ogle, Sevierville, and Mason Douglass, Dayton, Ohio, for Clem Kunk and others.

Kramer, Dye, McNabb & Greenwood, Knoxville, and Wynn & Wynn, Sevierville, for Patricia Howell.

Poore, Cox, Baker & McAuley, Knoxville, for Carl Huband.

McAMIS, P. J. This is an action for damages growing out of a three-car collision which occurred August 8, 1953, on U. S. Highway 441 at a point 6 miles west of Sevierville. The plaintiffs are Clem and Helen Kunk, parents of Elmer B. Kunk, who was operating their Plymouth automobile and lost his life at the time of the collision. They appeal from a verdict and judgment in favor of the defendant Carl Huband. The defendant Patricia Howell appeals from a judgment for Mr. and Mrs. Kunk in the sum of $21,900.

The decedent, Elmer B. Kunk, 19 years of age and a resident of Dayton, Ohio, accompanied by three other men, was returning to his home from a trip to Florida when the collision occurred. He was driving west toward Knoxville. Passing for the time being the question of

her identity, Patricia Howell, a resident of Indiana accompanied by another young lady, was driving eastwardly toward Sevierville in a Chevrolet car. The defendant Huband, accompanied by his wife and child, was driving an Oldsmobile from east to west following the Kunk car.

Mr. and Mrs. Kunk sued Miss Howell and Huband jointly, claiming that the Howell car, while being negligently operated, went out of control in rounding a curve, crossed from the south to the north side of the highway which was the deceased's proper side and there struck the Kunk car and that the defendant Huband negligently operated his car in such manner that it then struck the Kunk car from the rear throwing the driver out on the pavement and causing injuries from which he later died. Service of process was upon the Secretary of State as provided by statute. Both defendants filed pleas of the general issue.

We consider first the assignments of error of Patricia Howell under which she insists that the Court erred in limiting defendants to two peremptory challenges to the jury panel and in requiring her to accept the panel or exercise her second challenge before the replacement of a vacancy caused by the exercise of her first peremptory challenge; that the Court erred in not declaring a mistrial after one of the jurors announced that he passed the scene of the collision before the cars were moved and, finally, if heresay evidence of her identity had been excluded, there would have been no evidence to sustain a verdict against her and that her motion for a directed verdict should now be sustained and the suit dimissed. Miss Howell will be referred to as defendant.

Although a suit for property damage by the Kunks had been ordered tried with the suit for wrongful death, when the question of the number of challenges available to defendants was raised a nonsuit was taken in the suit for property damages. This left only one suit before the Court and the question is: Where two defendants are sued in the same action for a single injury due to separate acts of each is each defendant entitled to the number of challenges for cause allowed by statute?

Code, sec. 10019 provides:

*"Either party* to a civil action may challenge two jurors without assigning any cause." (Italics ours.)

In the next succeeding Section, Code, sec. 10020, it is provided that, in criminal cases, "each defendant" shall be entitled to the number of challenges available to a single defendant.

There is much to be said in support of defendant's insistence that where separate acts of more than one defendant are involved and their interests may well be antagonistic each should be entitled to the same number of challenges as if he were the sole defendant. Most courts hold that, unless a different treatment is required by statute, each defendant having an interest antagonistic to other defendants is entitled to the full number of peremptory challenges. See Annotation 136 A. L. R. 417.

We have noted above that under the controlling statutes the Legislature uses the term "each defendant" in dealing with criminal cases. Can we say that this difference in terminology is without significance? We think a negative answer is required by Blackburn v. Hays, 44 Tenn. 227, 230, where the Court said:

"It will be observed that there is a difference in the language of the Act giving the right to challenge in criminal and civil cases. In criminal cases the right is given to each party. In criminal causes, though the defendants are tried jointly, yet the judgment may be widely different. In civil actions the judgment is joint; they are sued jointly.

"We are, therefore, of opinion, in civil cases, each party to the suit, whether comprising one or more plaintiffs, is entitled to but two peremptory challenges.

"The Act of 1805, allowing but two challenges in civil cases, was carried into the Code, and is embraced in sec. 4012. The long established practice has been to allow but two challenges in civil cases, and we are unwilling, at this time, after so long an acquiescence by the profession, to change the construction that has been given to that Act." And see to the same effect Bruce v. Beall, 100 Tenn. 573, 579, 57 S. W. 204 and The History of a Lawsuit, Gilreath, sec. 323, note 55 where the learned author calls attention to the difference in the statutory requirements in civil and criminal cases.

██ It will be observed that the practice is founded upon a construction of the statute without regard to the question of diversity of interests and the statute was reenacted in the Code of 1932 long after the Supreme Court construed the Act contrary to the insistence now made. Peremptory challenges are allowed by the Legislature as an act of grace and can be exercised as a matter of right only to the extent allowed by statute.

██ We think the question of the propriety of requiring defendant to accept the panel or exercise her second peremptory challenge before filling the vacancy caused

by the first challenge is governed by Mahon v. State, 127 Tenn. 535, 548, 156 S. W. 458, and Hale v. State, Tenn., 281 S. W. (2d) 51. In the first of these cases the Court applied Chapter 32, Acts of 1911, now Code sec. 10654, and held that no reversal could be had on the complaint that peremptory challenges were *denied* if the jury which tried the case was a competent and impartial jury. In this case the right was not denied. The Court merely required defendant to exercise her right to challenge in a manner which she claims to have been erroneous. As in that case and in the Hale case there is no showing in this that the alleged error resulted in the acceptance of an incompetent juror. Under the Act we cannot reverse unless prejudice results from the error claimed. If error, no prejudice is shown to have resulted from the manner of selecting the jury.

It is next insisted that a mistrial should have been declared when, after two of plaintiffs' witnesses had been examined, Juror Williams announced to the Court that their testimony recalled to his mind that he passed the scene of the accident before the cars had been moved. Upon being interrogated by the Court and by counsel out of the presence of the remaining jurors, he stated unequivocally that he gained no impression as to who was at fault; that his impression was that there were two cars on the right side and one on the left but that if the proof should be otherwise he could and would accept the proof on that question; that he knew nothing material about the case and would try it on the law and the evidence. The Court thereupon inquired if the parties would agree either to retain this juror or try the case before the remaining members of the panel. Upon defendant's refusal to agree to either proposal the Court

held juror Williams competent and overruled defendant's moton for a mistrial. There is no proof that he made any statement during the deliberations of the jury based upon any personal knowledge he may have had about the case.

Under ancient common law, jurors were selected because of their personal knowledge of the facts. Under the modern doctrine, however, jurors who have such personal knowledge of material facts as will tend to form an opinion based upon bias are regarded as incompetent to sit as jurors even though they may feel that they can render an impartial verdict. Turner v. State, 111 Tenn. 593, 69 S. W. 774.

██ Whether a juror's knowledge is of such a nature as will be likely to bias him is a matter addressed to the sound discretion of the trial court. Cf. Conatser v. State, 80 Tenn. 436 and see 50 C. J. S., Juries, sec. 236, p. 988. If the knowledge of the juror is of such a nature as to raise a strong inference or presumption of bias he should be excused. But a knowledge of undisputed facts or of facts merely collateral or incidental will not render incompetent a juror who disclaims any opinion on the merits of the case. See 31 Am. Jur. 664, Jury. sec. 142; 50 C. J. S., Juries, sec. 236, p. 988.

█ In testing the fitness of a juror the character of the impression made upon his mind and the influence upon his conduct likely to be produced by it are of much greater consequence than the source from which such impression may have been derived. Moses v. State, 29 Tenn. 456, 459.

█ We find no abuse of discretion in requiring the trial to proceed.

On the question of identity, it appears that the Chevrolet involved in the collision was referred to throughout the trial as "the Howell car" and "the Patricia Howell car". Officers Cantwell and Ayers testified that they investigated a three-car collision which occurred on August 8, 1953, at a point 6 miles west of Sevierville on U. S. Highway 441. Cantwell testified: "I saw two ladies there. One of them * * * had identification as Patricia Howell."

Officer Ayers testified that after he left the scene of the accident he went to the Baptist Hospital in Knoxville for the purpose of continuing his investigation; that there were some ambulances from Knoxville and some of the injured parties "went to the Baptist Hospital at Knoxville"; that he found "these two women brought in from the scene of the accident in the same room"; that the one next to the window seemed to be unconscious and was being treated and he talked to the one nearest the door of the room; that she told him her name was Patricia Howell and related that she was driving her car and how the car went out of control, skidded and hit a car head-on coming from Sevierville to Knoxville. The testimony of this witness relating to his conversation with the patient nearest the door without identifying her as the defendant was objected to as hearsay.

Later, defendant introduced the custodian of the hospital record showing that Miss Patricia Howell was a patient in room 335 on August 8, 1953, and was assigned to bed "B" in that room and that the record does not show that Patricia Howell was ever in any other bed. On cross-examination she testified that, while bed "B" in the rooms of the hospital is "generally" next to the window and bed "A" next to the door, she made no check to

see that this arrangement was followed and that there was nothing in the record showing that Patricia Howell was actually in bed "B".

 It goes without saying that before the statement would be admissible against the defendant it would be necessary that plaintiff identify the declarant. But this could be done either by direct or circumstantial evidence. We think the circumstances are sufficient to make the identity of the declarant a question for the jury. The defendant was brought to this hospital on the day in question. Someone by the name of Patricia Howell was assigned to this particular room and the person making the statement showed familiarity with this particular accident. The only other person concerning whom all of these circumstances could have been true was her companion. A jury might conclude that it would be unreasonable to suppose that the defendant's companion would falsely represent herself as being Patricia Howell in order to make out a case of liability against her. The record suggests no reason for such an act.

 The fact that beds in the hospital were generally in the reverse position goes only to the weight of the circumstantial evidence offered by plaintiff. In a civil case depending on circumstantial evidence it is not necessary that every reasonable conclusion than that sought to be established be excluded but only that the proof make out the more probable hypothesis. Bryan v. Aetna Life Ins. Co., 174 Tenn. 602, 130 S. W. (2d) 85. The question then becomes one for the jury. Tennessee Cent. Ry. Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931; Yearwood for use of American Ins. Co. of Newark, N. J., v. Louisville & N. R. Co., 32 Tenn. App. 115, 222 S. W. (2d) 33.

██ Defendant also mildly insists that the verdict is excessive. We cannot say that a verdict for $21,900 for the death of a young man of good disposition and prospects, 19 years of age, gainfully employed and having a high school education is excessive.

It results that all of the assignments of error of defendant Patricia Howell are overruled and the judgment affirmed.

██ Plaintiffs' first assignment of error that the evidence preponderates in their favor and against the defendant Huband cannot be considered since we do not weigh the evidence to determine the preponderance thereof in jury cases. Bradley County Farm Bureau v. Epperson, 18 Tenn. App. 131, 73 S. W. (2d) 1116; Nashville, C. & St. L. Ry. Co. v. Harrell, 21 Tenn. App. 353, 110 S. W. (2d) 1032; City of Columbia v. Leutz, Tenn. App., 282 S. W. (2d) 787.

██ The second assignment complains of the court's refusal to charge that a person driving on a wet street must take into account the fact that he cannot stop his car as readily as on a dry road. This question was sufficiently covered by the general charge that defendant Huband, in operating his car, was required to take into account all the circumstances including the fact that the road was wet.

██ It is insisted the court erred in charging the doctrine of the last clear chance as being applicable to defendant Huband since, it is said, the doctrine is not a defensive weapon and can only be invoked by a plaintiff. The authorities appear to be sharply divided on this question. See annotations 32 A. L. R. (2d) 548. The question seems to be of first impression in this State.

Tennessee, however, is one of those jurisdictions holding that the doctrine is but a phase of proximate cause. Southern Ry. Company v. Terry, 3 Tenn. Civ. App. 445, 460. Under that concept of the doctrine it would not be logical to apply it in favor of a plaintiff but not in favor of a defendant.

"* * * As graphically stated by some authorities, the doctrine of discovered peril is a two-edged sword, applicable equally to the rights of a defendant and those of a plaintiff. Logically, if the doctrine is a rule of proximate cause, its application should not be affected merely by who happens to be plaintiff or defendant. It should be just as available to a person who is a defendant in a negligence action as it would be if he, as plaintiff, were seeking to be compensated for injuries which he himself received in the accident. * * *" 38 Am. Jur. 911.

Plaintiffs next insist that the Court erred in giving undue emphasis to the theory of the defendant Huband. It is true the Court in its charge mentioned the theory of this defendant at three separate places. The first reference goes into detail as to the facts with particular application to defendant Huband's theory and insistence. The other references state that defendant Huband insisted that he was not guilty of violating the statutes invoked by plaintiff and that he did all that a reasonably prudent person would have done to avoid the accident. While one of these latter references could have been omitted we cannot see that any prejudice resulted to plaintiffs.

Other questions made by the assignments have been considered and found without merit. One of these is that the Court erred in not charging on the duty of the

driver of a vehicle traveling behind another to have his vehicle under such control as to be able to stop in event of an emergency. If this was error it was due to meagreness in the charge which, in the absence of special request, cannot be considered reversible error. Tevis v. Proctor & Gamble Distributing Co., 21 Tenn. App. 494, 113 S. W. (2d) 64.

Finding no error all assignments are overruled and the judgment affirmed. Costs of the Circuit Court will remain as there taxed and costs of appeal equally divided between plaintiffs and defendant Howell.

Hale and Howard, JJ., concur.