James A. HUEY, Plaintiff-Appellee,

v.

David R. TIPTON, Anne Edwards Young, Walter T. Roberts, Elizabeth T. Roberts, Elizabeth Roberts Hopper, Paul Roberts, William Carlton Roberts, LaVergne T. Sudbury, Douglas T. Sudbury, Horace L. Tipton, Jr., Beulah T. Wyatt, Shirley Krueger, James M. Sudbury, Jr., and Hale C. Tipton, III, Defendants-Appellants.

Court of Appeals of Tennessee, Western Section, at Jackson.

Dec. 22, 1986.

Application for Permission to Appeal Denied April 6, 1987.

William B. Acree, Jr., Union City, for plaintiff-appellee.

Omer and Taylor, Brentwood, for defendants-appellants.

CRAWFORD, Judge.

Defendants, grantors under a timber deed to plaintiff, appeal from the judgment

of the trial court sitting without a jury declaring the timber deed in full force and effect and reducing the future annual payments required by its terms.

On June 25, 1980, the parties executed a document entitled "Timber Deed" by which defendants for $60,000 cash paid by the plaintiff conveyed to the plaintiff all the timber standing on the described tract of land, 14 inches in diameter, measured 12 inches from the ground. We quote the provisions of the deed pertinent to this lawsuit:

The Grantee, its successors and assigns, are hereby granted until July 1, 1981, within which said timber and trees herein sold and conveyed must be cut and removed. However, upon payment by Grantee in the amount of $5,000 per annum due and payable to the Grantor on or before July 1, 1981, and on or before July 1 of each year thereafter, Grantor agrees to extend the time limit for cutting and removing timber covered by this conveyance on an annual basis until such time as the described timber has been cut. However, in no event shall the time limit be extended beyond July 1, 2000. The Grantee further covenants that if default is made in said annual payment or if Grantee violates any of the covenants of the deed, then said Grantee shall waive all rights of notice and Grantor shall be entitled to immediately re-enter and retake possession of all timber conveyed by this instrument.

In addition to the initial $60,000 payment, plaintiff made the required payments for the following four years. At the time the lawsuit commenced, the plaintiff had removed only about $10,000 worth of timber. Plaintiff testified that at the inception of the agreement the value of the proper size timber was less than the initial $60,000 payment and that he intended to allow the trees to grow in order to produce a profit.

In February, 1985, the State of Tennessee filed a condemnation proceeding for approximately 112 acres of land which named the plaintiff and all of the defendants as parties. The price offered by the State was a lump sum and it made no attempt to allocate the proceeds between the plaintiff and defendants as their interests may appear. Subsequent to the filing of the condemnation proceedings, plaintiff and several of the defendants met to discuss the future conduct of the proceedings and the allocation of the proceeds. Plaintiff testified that at that meeting they also discussed a reduction in the future annual payments because of the taking by the State. Plaintiff testified that he suggested to the defendants at the meeting that his future annual payments be reduced by about one-fifth since the state had taken almost one-fifth of the total acreage, but that defendants did not agree on this. He testified that they said they would consider the matter and get back in touch with him. Plaintiff states that he did not make the July 1, 1985, payment because he waited to hear from the defendants as to the amount they wanted for that annual installment but never heard from them. Some of the defendants that were at the meeting testified that they made no such representations to plaintiff and did not hear any of the other defendants making any such representations.

On July 1, 1985, plaintiff was out of the country and did not make the payment due on that date. On July 10, 1985, defendants through their attorney notified the plaintiff that the option to remove the timber was terminated. On July 13, 1985, plaintiff tendered payment of $5,000, but this was not accepted by the defendants and was returned to plaintiff.

The trial court found that the defendants suffered no damage as a result of the thirteen day lapse in the tender of the $5,000 annual payment and that to allow defendants to terminate the timber deed and retain the $80,000 paid by plaintiff would be inequitable, amount to a forfeiture, and would result in unjust enrichment to the defendants. Accordingly, the court held that the timber deed was still in full force and effect. Also, the court held that the annual payments beginning in 1986 should be reduced from $5,000 to $4,000. Defendants have presented nine issues for review which we will quote as necessary in

the consideration of the issues in the order presented by defendants.

*Issue No. 6:* Whether the court erred in admitting testimony concerning conversations between the appellee, Huey, and the appellants, over objection when, by stipulation in the complaint and answer or the averment and admission in the complaint and answer was that no such conversation had ever occurred.

Although our view of this issue is that it is without merit based on the record, we will not prolong this opinion to discuss the issue because no objection was made to the introduction of the evidence in the trial court. Appellate review on the improper admission of evidence is waived unless the evidence was timely objected to at the trial. *Hailey v. Cunningham,* 654 S.W.2d 392, 395 (Tenn.1983); *Morrow v. Thompson,* 626 S.W.2d 706, 708 (Tenn.App.1981).

*Issue No. 7:* Whether the trial court erred in admitting any testimony concerning conversations with "they" without identifying the speaker.

During the testimony of plaintiff, he was questioned concerning the meeting that he had with some of the defendants concerning the State's action condemning part of the property. We quote from the transcript:

Q. Was there any discussion between you and the Tipton heirs about an adjustment being made of the $5,000 annual payment?

A. There certainly was, and they agreed it should be adjusted.

[defendant's attorney] Mr. Taylor: "They?"

Your Honor, I am going to object until we can be more specific on "they."

THE COURT: Let the objection be overruled. He has ennumerated some of the Tiptons and he said he thought most of the Tipton heirs that he knew were there. So that's sufficient.

Defendants assert that plaintiff never identified the person or persons with whom he discussed an adjustment of the annual payment. In *Kunk v. Howell,* 40 Tenn. App. 183, 289 S.W.2d 874 (1956), the court, in considering the admissibility of a statement attributed to one of the defendants to a police officer, stated:

It goes without saying that before the statement would be admissible against the defendant it would be necessary that plaintiff identify the declarant. But this could be done either by direct or circumstantial evidence.

*Id.* at 878. In *Kunk,* the question was whether the declaration was admissible against that particular defendant. Certainly some evidence must be introduced that the defendant made such a declaration. In the case before us, however, we have multiple defendants and plaintiff testified that some of the multiple defendants had the conversations with him. We believe that plaintiff has satisfied the requirements of *Kunk,* and the failure to pinpoint the exact defendant that made the statement goes to the weight of the evidence rather than to its admissibility.

*Issues Nos. 4, 8 and 9:*

4. That the Trial Court erred in framing the issue as to whether failure of the appellee, Huey, to make a payment of $5,000.00 on or before July 1, 1985, would work a forfeiture of the timber deed, and further in finding, or at least apparently finding and holding as a matter of law, that such did in fact constitute a forfeiture and that "to declare a forfeiture would be to allow unjust enrichment."

8. The Trial Court erred in failing to find and hold as a matter of law that the appellee had an option to renew his timber contract, and that the same expired upon its own terms by his failure to comply therewith, time being of the essence in option contracts.

9. The Trial Court erred in failing to hold that the appellee failed for a period of nearly a year to take any action to protect himself by making his payment as required under the terms of the Timber Deed, making his payment and filing suit to recover any amount to which he believed himself entitled, or the filing of a declaratory judgment action coupled with a tender seeking a declaration as to whether he was entitled to a reduction in

the option payments, instead of simply relying upon vague statements to the effect that "they" said they would get back with me.

The three issues set out above can logically be rephrased into the single issue of whether the trial court erred in refusing to allow the termination of the contract because it would result in a forfeiture. Forfeitures are not favored in equity, and unless the penalty is fairly proportionate to the damages sustained by the breach, relief will be granted when the party seeking the forfeiture can, by compensation or otherwise, be placed in the same condition as if the breach had not occurred. *Hasden v. McGinnis*, 54 Tenn.App. 39, 387 S.W.2d 631 (1964).

In *Harmon v. Eggers*, 699 S.W.2d 159 (Tenn.App.1985), the court refused to enforce a liquidated damages clause in a real estate sale and purchase agreement because the buyer had paid $32,000 down and four monthly installments on a total purchase price of $63,000 at the time of default. The court stated:

> As a result we conclude the "liquidated damages" clause, being nothing more than or less than a forfeiture penalty is not to be given effect under the existing circumstances.

*Id.* at 164.

Defendants contend, however, that the provision of the timber deed allowing a $5,000 annual payment to continue the right to harvest the timber is an option and that the deed is specific in its terms that upon failure to exercise the option the contract is terminated. The defendants assert that the trial court erred in not declaring the extension provision to be an option and thereupon holding the contract terminated. This same position was taken by the grantor in a timber deed in the case of *Jones v. Gibbs*, 130 S.W.2d 265 (Comm. of App. of Texas 1939). The timber deed in this case provided for an original term of ten years for harvesting the timber with a provision for an extension from year to year upon payment of a small sum per acre for the property to which the extension would apply. The grantee did not strictly comply with the extension provision, and the grantor sought a judgment declaring the deed to be no longer operative. The court noted the difference between an ordinary option and the provision for extension provided in the timber deed, and he indicated that a timber deed of the type construed in *Jones*, which included a feature allowing the purchase of a right to additional time "is in the nature of an option." However, the court pointed out that in a normal option contract a sum is paid for the option and the full purchase price is not paid until the option to buy is exercised. However, in the case of this timber deed the full purchase price had been paid. Another difference noted by the court between a normal option contract and the timber deed in *Jones* is that in a normal option contract conveyance of the property is not made until the option is exercised, while a timber deed where the option to extend is made, "becomes in effect a present grant, as of its date, of a right to the use of the land for the entire period, including the extension." *Id.* at 268. The court went on to note that if the grantees did not make the payment as required:

> [t]here was no such compliance and the time was not extended, unless by reason of the peculiar facts and special circumstances, equity may grant relief from a literal enforcement of the conditions prescribed by the deed.
>
> The rule announced and applied in a number of decisions, construing provisions for extension similar to those contained in the deed in the instant case, is that the grantee must strictly comply with the terms and conditions of the agreement for the extension and will not be given equitable relief in the absence of such compliance, because the agreement is an option, or in the nature of an option, and unilateral in its obligation. (Citations omitted).
>
> That the rule announced by the foregoing authorities is not an absolutely inflexible one is evidenced by the authorities hereinafter cited and discussed.

*Id.* at 271–72.

The court indicated that it believed that the circumstances of the case required a

departure from the usual strict rule regarding option contracts. This was because the error or mistake might have been in part a result of the plaintiff-landowner actions but in any event was not due to willful or gross negligence. The court noted that to follow the usual rule would result in the loss of over two-thirds of the timber already paid for and stated: "We are unwilling to hold that a court of equity is without authority to prevent such unconscionable hardship." *Id.* at 273.

█ In the case at bar, the plaintiff paid $60,000 for timber admittedly worth much less at that time and paid an additional $20,000 in annual extension payments. He harvested less than $10,000 worth of timber. His failure to pay the annual payment on time was an honest mistake and caused no damage to defendant. To allow defendants to retain the $80,000 and terminate the deed would be to enrich them by some $70,000. We, like the Texas court, are unwilling to hold that a court of equity is without authority to prevent such unconscionable hardship. In the case at bar defendants were not damaged in any way by the 13-day late payment, and equity would not be served by allowing them to reap a windfall for such a short delay.

Issues 1, 2, and 3 complain of the trial court's finding of fact. The findings complained of in issues 1 and 2 are amply supported by the evidence and we find these issues without merit. The finding complained of in Issue 3 is not supported by the evidence. However, the finding is not as to a dispositive issue and does not affect the judgment rendered by the court. Therefore, we find this issue without merit. See T.R.A.P. 36(b).

█ The final issue presented for review is whether the trial court erred in reducing the annual payment of $5,000 to $4,000. The proof in the case before us indicates that the condemnation proceeding is still pending and that there has been no determination as to the value of the land and timber taken. Such determination is essential to a determination of whether a reduction in future payments should be made. The record is not sufficient to show any amount of loss and simply does not support any reduction in the annual payments.

The judgment of the trial court reducing the annual payment from $5,000 to $4,000 is reversed, and the judgment in all other respects is affirmed. The case is remanded for such further proceedings as necessary. Costs of appeal are adjudged against the appellants.

TOMLIN, P.J., W.S., and FARMER, J., concur.