**Charles B. DODD, Jr. and Joan M. Dodd, Plaintiffs/Appellants,**

v.

**Mark VARADY, Defendant/Appellee.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

March 16, 1990.

Application for Permission to Appeal Denied by Supreme Court Oct. 1, 1990.

William G. Colvin, Shumacker & Thompson, Chattanooga, for plaintiffs/appellants.

Thomas A. Harris, Milligan, Harris, Barry & Hensley, Chattanooga, for defendant/appellee.

TOMLIN, Presiding Judge, W.S.

This case stems from a boating accident on the Tennessee River near Chattanooga involving the application of federal maritime law. Charles and Joan Dodd (hereafter "plaintiffs") filed suit in the Circuit Court of Hamilton County against Mark Varady (hereafter "defendant") for damages resulting from personal injuries, medical expenses and loss of consortium sustained by them in a boating accident on Lake Chickamauga. Defendant filed a counterclaim against Charles Dodd for damages to his boat. Following a jury trial a verdict was rendered in which it was stated that all three parties were found guilty of negligence, but that the negligence of plaintiff, Charles Dodd, was the sole, proximate cause of the accident. Judgment was entered in favor of defendant on plaintiffs' suit and in favor of defendant against plaintiffs on his counterclaim in the amount of $1,088. On appeal the only issue presented is whether or not the trial court committed reversible error by instructing the jury on the doctrine of last clear chance. We hold that it was error. Accordingly, we reverse and remand for a new trial.

The relevant facts and evidence are as follows: On a beautiful summer's day—perfect boating weather—plaintiffs launched their fiberglass runabout motor boat, powered by an outboard motor, from a public boat ramp at Chester Frost Park on Lake Chickamauga and proceeded away from the launch area. Charles Dodd was at the helm, while his wife, Joan Dodd, was a passenger. Following a bit of sightseeing, plaintiffs proceeded back toward the launch area where they were to meet friends. As they approached the launch area, plaintiffs observed what appeared to be the boat of the friend they were supposed to meet. At about the same time Charles Dodd noticed a bass fishing boat approaching from his port or left side. According to Dodd, the boat appeared to be some 200 yards away when he first noticed it. Joan Dodd observed the bass boat when it was approximately 150 yards from their boat. Both Charles and Joan Dodd were of the opinion that the approaching boat posed no danger to them at that time.

Charles Dodd continued his approach to the boat ramp. He again looked to his left and observed the bass boat at a point approximately 50 yards from his boat. At that time Charles Dodd turned his boat hard to the right, or starboard, in an attempt to avoid a collision, but he was unable to maneuver his boat out of the path of defendant's boat. The two boats collided, resulting in personal injuries to Joan Dodd and property damage to both boats. The proof was to the effect that both before and at the time of the accident defendant's boat was traveling at 35 mph, while plaintiffs' boat was traveling 10 to 15 mph.

Defendant never saw plaintiffs' boat until just an instant before impact for the stated reason that he had been looking to his left toward the parking lot on shore, observing his automobile. Edwin Simpson, who testified for the defendant, stated that he was on shore some 200 yards away from the accident scene. He did not see the collision but turned upon hearing the sound of the impact. He observed the wakes of the respective boats, and based upon his observation reconstructed how he perceived the accident could have happened.

He voiced the opinion that the accident would have been avoided had Charles Dodd not turned his boat directly into the path of defendant.

As part of his instructions, the trial court charged the jury in part as follows:

THE COURT: ... Let me go one step farther with regard to the law of proximate cause. Let me read to you something that's known as the doctrine of last clear chance.

"Party who has placed himself or herself in a position of danger or subjects themselves to a risk of harm, will be barred from his right to recovery unless you find from the evidence that each of the following additional facts existed: That the person would not escape from his or her position of danger by the exercise of ordinary care because he or she was totally unaware of the danger; and, two, the defendant or the person that they're accusing of negligence knew of the plaintiff's situation; and, three, the person realized or had reason to realize that the plaintiff was inattentive, therefore unlikely to discover his peril in time to avoid the harm and the person thereafter had a clear opportunity to avoid the accident by the exercise of ordinary care but failed to avail himself or herself of such opportunity, and such failure was a proximate cause of the accident."

Plaintiffs contend that it was error to instruct the jury on the doctrine of last clear chance inasmuch as liability in admiralty cases is determined under the doctrine of comparative negligence, which negates the application of the last clear chance doctrine. On the other hand, defendant contends that it was proper to charge the doctrine of last clear chance to the jury as an aid to their determination of proximate cause of the accident.

■ Inasmuch as the instant case involves a collision of two boats on the Tennessee River, admiralty law is applicable and is to be applied whether the action is brought in a state court or in a federal court. *Poss v. Dixie Sand & Gravel Co.,* 62 Tenn.App. 64, 458 S.W.2d 625, 626 (1970). In cases tried under admiralty law, the doctrine of comparative negligence is to be applied. *United States v. Reliable Transfer Co.,* 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). The application of comparative negligence to admiralty cases has for many years been recognized in Tennessee. *Poss, supra.*

■ In 1855, in the case of the *The Catharine v. Dickinson,* 17 How. 170, 58 U.S. 170, 15 L.Ed. 233, the United States Supreme Court established in admiralty law the rule of divided damages. The practical application of that rule was described in *The Sapphire,* 18 Wall 51, 56, 85 U.S. 51, 21 L.Ed. 814 (1873):

It is undoubtedly the rule in admiralty that where both vessels are in fault the sums representing the damage sustained by each must be added together and the aggregate divided between the two. This is in effect deducting the lesser from the greater and dividing the remainder....

The "divided damages" rule produced unfair results in many cases, especially when the negligence was grossly disproportionate between the parties. To ameliorate the effect of what was considered by many courts to be a harsh rule, the courts developed and utilized several doctrines, one of which was that of last clear chance. See *Chemical Transporter, Inc. v. M. Turecamo, Inc.,* 290 F.2d 496 (2nd Cir.1961), citing *The Cornelius Vanderbilt,* 120 F.2d 766 (2nd Cir.1941).

However, under the "divided damages" rule, the doctrine of last clear chance was disfavored by admiralty courts. See *S.C. Loveland, Inc. v. East West Towing, Inc.,* 608 F.2d 160, 169 (5th Cir.1979), *cert. den.* 446 U.S. 918, 100 S.Ct. 1852, 64 L.Ed.2d 272 (1980).

Even as early as 1959, the courts were openly shying away from the viability of the last clear chance doctrine in admiralty cases. The attitude of the courts, particularly the federal courts that most frequently deal with admiralty law, toward the elimination of the last clear chance doctrine is clearly reflected in *Cenac Towing Co. v. Richmond,* 265 F.2d 466, 470 (5th Cir.

1959). Writing for the Court, Judge Wisdom stated:

> The shift in thinking, reflected in comparative negligence statutes, toward evaluating the conduct of the parties and weighing their proportionate share in the accident ... is now leaving little elbow room for the last clear chance doctrine.

Aware of the judicial climate that existed, in 1975 the U.S. Supreme Court was offered an appropriate opportunity to scuttle the divided damages rule, when presented the case of *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975). *Reliable Transfer* arrived at the Supreme Court by way of certiorari from the Second Circuit Court of Appeals. Reliable had sought recovery for damages to one of its vessels caused by being stranded in heavy seas. The stranding was brought about in part by the malfunction of a navigation light maintained by the Coast Guard on a breakwater in the area of the stranding. The district court found that the grounding was caused twenty-five percent by the Coast Guard and seventy-five percent by the fault of the vessel's crew. The Second Circuit refused to abandon the "divided damages" rule or to apply the doctrine of last clear chance. Instead, it followed the rule of divided damages, awarding plaintiff fifty percent of its loss.

In overruling the "divided damages" rule, the U.S. Supreme Court stated:

> The rule of divided damages in admiralty has continued to prevail in this country by sheer inertia rather than by reason of any intrinsic merit. The reasons that originally led to the Court's adoption of the rule have long since disappeared. The rule has been repeatedly criticized by experienced federal judges who have correctly pointed out that the result it works has too often been precisely the opposite of what the Court sought to achieve in *The Schooner Catharine*—the "just and equitable" allocation of damages. And worldwide experience has taught that that goal can be more nearly realized by a standard that allocates liability for damages according to comparative fault whenever possible.

> We hold that when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault.

421 U.S. at 410–11, 95 S.Ct. at 1715–16.

Defendant has failed to cite to this Court any admiralty cases decided since the Supreme Court's opinion in *Reliable* wherein the last clear chance doctrine was applied. Furthermore, our research failed to reveal any such cases as well.

The rationale for the elimination of the last clear chance doctrine in admiralty cases with the onset of the comparative negligence rule has been often and clearly stated by the courts of this country. In *Prudential Lines, Inc. v. McAllister Bros., Inc.*, 801 F.2d 616 (2nd Cir.1986), the Second Circuit, long on the cutting edge of admiralty law, stated:

> In the years since *Chemical Transporter*, however, the Supreme Court has removed the reason for existence of the last clear chance doctrine in admiralty cases. Noting that the rule of divided damages had survived "in this country by sheer inertia rather than by reason of any intrinsic merit," *Reliable Transfer*, 421 U.S. at 410, 95 S.Ct. at 1715 ... the Court finally put an end to divided damages in admiralty law.

> ....

> The disease of divided damages having been destroyed, the balm of last clear chance has become superfluous. The last clear chance doctrine will not be permitted to continue in this circuit out of sheer inertia. We hold, therefore, that when two or more parties have contributed by their fault to the cause of a maritime accident, regardless of which party had the last clear chance to avoid that accident, "liability for such damage

is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault." [citations omitted]

*Id.* at 621.

In *Hercules, Inc. v. Stevens Shipping Co.,* 765 F.2d 1069 (11th Cir.1985), defendant Stevens had been found liable to plaintiff for negligently loading cargo that was damaged in the sinking of a vessel. Stevens argued that based upon the doctrine of last clear chance, its negligence was "too remote" to give rise to liability for the loss.

In affirming the district court, the Eleventh Circuit stated:

This argument is constructed on a faulty legal foundation. The doctrines of intervening cause and last clear chance, like those of "major-minor" and "active-passive" negligence, operated in maritime collision cases to ameliorate the harsh effects of the so-called "divided damages" rule, under which damages were divided evenly between negligent parties. [citation omitted] In 1975, however, the Supreme Court rejected the "divided damages" rule, replacing it with a system of "proportional fault." [citation omitted]

. . . .

Under a "proportional fault" system, no justification exists for applying the doctrines of intervening negligence and last clear chance. *Cf. Loose [v. Offshore Navigation, Inc.],* 670 F.2d [493], 501–02 [(5th Cir.1982)] (reaching same conclusion with respect to doctrine of "active-passive" negligence). Unless it can truly be said that one party's negligence did not in any way contribute to the loss, complete apportionment between the negligent parties, based on their respective degrees of fault, is the proper method for calculating and awarding damages in maritime cases. *See generally Harri-*

son v. Flota Mercante Grancolombiana, S.A., 577 F.2d 968, 981–82 (5th Cir.1978). The doctrines of intervening negligence and last clear chance should not be used to circumvent this "proportional fault" concept.

*Id.* at 1075.

In the case of *In Re Complaint of Sheen,* 709 F.Supp. 1123 (S.D.Fla.1989), the court was faced with an action brought by a boat owner seeking exoneration from liability arising out of a collision between his boat and another. A guest aboard the other boat had sued Sheen for personal injuries. In denying the relief sought by the petitioner, the court stated:

The complainant's first two arguments[1] rest upon antiquated law. Since 1890, contributory negligence has not been a barrier in cases of maritime tort founded upon negligence.

. . . . .

With the end of the divided damages doctrine also came the end to the last clear chance doctrine. [citations omitted] Because comparative fault has replaced these antiquated doctrines, the court must reject the complainant's first two arguments.

*Id.* at 1132.

Other post–1975 cases holding the last clear chance inapplicable are *Whitney S.S. Co. v. United States,* 747 F.2d 69 (2nd Cir.1984); *S.C. Loveland, Inc. v. East West Towing, Inc.,* 608 F.2d 160 (5th Cir.1979); and *American Home Assur. Co. v. L & L Marine Service, Inc.,* 688 F.Supp. 502 (E.D. Mo.1988).

Defendant's reliance upon *Kunk v. Howell,* 40 Tenn.App. 183, 289 S.W.2d 874 (1956) as authority for his contention that the last clear chance instruction was not erroneous is misplaced for two reasons: First, we begin with a basic premise that admiralty law, not Tennessee common law, applies to this case. Admiralty law since *Reliable Transfer, supra,* does not condone or recognize the application of last clear chance. Second, notwithstanding

---

**1.** Complainants' first two arguments were that the original plaintiff was guilty of contributory

negligence and he had a last clear chance to avoid the injury.

that the Eastern Section of this Court applied last clear chance as part of the law of proximate cause, nonetheless, it was done under the umbrella of contributory negligence, an aspect of common law negligence.

Based upon the reasons stated above, we find that the giving of the last clear chance instruction by the trial court was erroneous, and that it was prejudicial error to the plaintiffs. Accordingly, we reverse the judgment of the trial court and remand this cause to the Circuit Court of Hamilton County for a new trial to be conducted in accordance with the principles herein set forth. Costs in this cause are taxed to defendant, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.