# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

**FILED**

**February 21, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

WASTE MANAGEMENT, INC. )
OF TENNESSEE, )
 )
 Plaintiff/Appellee, )
 ) Davidson Circuit
 ) No. 88C-462
VS. )
 ) Appeal No.
 ) 01A01-9504-CV-00182
SOUTH CENTRAL BELL )
TELEPHONE COMPANY, )
 )
 Defendant/Appellant. )

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE THOMAS W. BROTHERS, JUDGE

For the Plaintiff/Appellee:

Angus Gillis, III
SCHULMAN, LeROY & BENNETT
Nashville, Tennessee

For the Defendant/Appellant:

Steven E. Anderson
BASS, BERRY & SIMS
Nashville, Tennessee

## MODIFIED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal stems from an incident in which a piece of broken telephone pole being dragged behind a garbage truck struck a pedestrian. The pedestrian sued the owner of the truck, the truck driver, and the telephone company in the Circuit Court for Davidson County. After the truck's owner settled all the pedestrian's claims, the trial court conducted a bench trial on the remaining claims between the truck owner and the telephone company and awarded the truck owner a $27,114.47 judgment against the telephone company. On this appeal, the telephone company asserts that the final judgment is inconsistent with the trial court's initial finding that the intervening negligence of an unknown driver, not the telephone company's installation or maintenance of its equipment, proximately caused the pedestrian's injuries. We find that the judgment must be modified because of the lack of evidence establishing a causal connection between the pedestrian's injuries and the telephone company's installation and maintenance of its lines and poles.

## **I.**

Glenn Griggs drove a garbage truck for Waste Management, Inc. in Nashville. On October 17, 1987, a metal bracket on the right rear of his truck snagged some overhead telephone lines as he made a right turn from Wedgewood Avenue onto Beech Avenue. Mr. Griggs did not realize that the telephone lines had become ensnarled on the back of his truck and kept driving down Beech Avenue. The increased tension on the lines broke a nearby telephone pole, and the top piece of the pole, still attached to the tangled lines, careened down the street behind Mr. Griggs's truck. Mr. Griggs did not stop his truck until he heard the second telephone pole break. Only then did he discover that he had been dragging a piece of the broken telephone pole behind his truck and that it had struck and injured Mary Owen who had been standing in the roadway on Beech Avenue.

Ms. Owen sued Waste Management, Inc. and Mr. Griggs for $750,000. Waste Management, Inc. filed a third-party complaint against South Central Bell

Telephone Company alleging negligent maintenance of the telephone wires and poles. South Central Bell filed a cross-claim against Waste Management, Inc. and Mr. Griggs for damages to its equipment. Ms. Owen dismissed all her claims in early 1990 after Waste Management, Inc. agreed to pay her $275,000. South Central Bell thereafter amended its answer to challenge Waste Management, Inc.'s right to seek contribution or indemnity[1] and to assert that Ms. Owen's injuries had been caused by the negligence of an unknown motorist who had severed a guy wire on one of the poles before the incident with Waste Management, Inc.'s truck.

Following a bench trial in September 1994, the trial court decided that comparative fault principles applied to South Central Bell's property damage claim against Waste Management, Inc. but not to Waste Management Inc.'s contribution claim against South Central Bell. It then found that South Central Bell had not complied with the height requirements of the National Electric Safety Code when it installed its telephone line but that this "technical violation" did not cause Ms. Owen's injuries.[2] The trial court specifically found that Ms. Owen's injuries were caused by an unknown driver who, in an earlier unrelated incident, had severed the guy wire supporting one of the broken telephone poles thereby causing the telephone lines to drop low enough to be snagged by a passing vehicle like Waste Management, Inc.'s garbage truck.[3] Accordingly, the trial court dismissed Waste Management, Inc.'s contribution claim against South Central Bell.

---

[1]The challenge to Waste Management, Inc.'s contribution claim was based on the apparent repudiation of contribution among joint tortfeasors in *McIntyre v. Balentine,* 833 S.W.2d 52, 58 (Tenn. 1992) (holding that "the Uniform Contribution Among Joint Tort-feasors Act . . . will no longer determine the apportionment of liability between codefendants").

[2]The trial court stated: "But most importantly, I specifically - this is for the purposes of the record - do find that the technical violation of the statutory provisions as far as the height of the wire is not the proximate cause of this particular event which has occurred and the injuries which were suffered which were the basis of this settlement."

[3]The trial court stated: "The absolute most guilty party in this matter is whoever hit this guy wire. That's whose negligence is responsible for these injuries.. . . apparently somebody - probably even the night before which we just don't know, and at some recent time, ran into this guy wire, and they're the people whose negligence is mostly responsible, and I do find that supports the argument for intervening cause to come in and break the chain of responsibility that may be there."

The trial court then turned to South Central Bell's claim for the damage to its equipment. Notwithstanding its earlier findings with regard to causation, the trial court assessed sixty percent of the fault to the unknown driver who severed the guy wire; thirty percent of the fault to Waste Management, Inc. because Mr. Griggs should have seen the telephone wire hanging over Beech Avenue; and ten percent of the fault to South Central Bell. Since the parties had stipulated that the telephone company's damages were $1,618.46, the trial court awarded South Central Bell a $485.53 judgment against Waste Management, Inc.

Waste Management, Inc. filed a post-judgment motion requesting the trial court to alter or amend the dismissal of its contribution claim in light of a recently released Tennessee Supreme Court decision holding that contribution actions tried or retried after the *McIntyre v. Balentine* decision should be tried in accordance with comparative fault principles. *See Bervoets v. Harde Ralls Pontiac-Olds, Inc.,* 891 S.W.2d 905, 908 (Tenn. 1994). The trial court granted this motion and departing from its original findings, determined that Ms. Owen's injuries were caused sixty percent by the negligence of the unknown driver who severed the guy wire, thirty percent by the negligence of Waste Management, Inc., and ten percent by the negligence of South Central Bell. Accordingly, the trial court awarded Waste Management, Inc. a $27,114.27[4] judgment against South Central Bell.

## II.

South Central Bell attaches great significance to the trial court's original causation findings and asserts that the trial court's subsequent allocation of fault on Waste Management's contribution claim cannot stand because it conflicts with these findings. We find no inconsistency. Rather, we find that the trial court simply changed its mind with regard to the causation issue between the time it rendered its initial decision and the time it granted Waste Management, Inc.'s motion to alter or amend.

---

[4]In light of its allocation of ten percent of the fault to South Central Bell, the trial court reasoned that Waste Management, Inc. was entitled to $27,500 (10% of the $275,000 paid to Ms. Owen). It also determined that South Central Bell's $485.53 property damage judgment should be deducted from this award. Subtracting $485.53 from $27,500 leaves $27,014.47. Thus, the judgment for $27,114.47 contains a $100 arithmetic error.

A judgment adjudicating all the claims between all the parties becomes final thirty days after entry unless one of the parties files a Tenn. R. Civ. P. 59 motion. A trial court has the authority to alter or amend its judgment before it becomes final. *Jerkins v. McKinney,* 533 S.W.2d 275, 280 (Tenn. 1976); *Newport Hous. Auth., Inc. v. Hartsell,* 533 S.W.2d 317, 320 (Tenn. Ct. App. 1975). Thus, as long as its judgment has not become final, the trial court may change its mind after reconsidering the proof and the applicable law. *Dowling v. Fawver,* C.A. No. 715, 1987 WL 20190, at *6 (Tenn. Ct. App. Nov. 25, 1987) (No Tenn. R. App. P. 11 application filed).

The trial court originally ruled from the bench that the negligence of the unknown driver, not South Central Bell's failure to install its lines at the required height, proximately caused Ms. Owen's injuries. This finding provided the basis for the judgment dismissing Waste Management, Inc.'s contribution claim and awarding South Central Bell $485.53. This judgment, however, never became final because Waste Management, Inc. filed a timely Tenn. R. Civ. P. 59.04 motion. After reconsidering the evidence using comparative fault principles, the trial court changed its mind on the question of causation. Rather than allocating one hundred percent of the fault to the unknown driver, it allocated sixty percent of the fault to the unknown driver, thirty percent of the fault to Waste Management, Inc., and ten percent of the fault to South Central Bell.

The trial court's original causation findings lost their legal significance when the trial court changed its mind and entered a final judgment allocating fault among three parties. The final judgment is internally consistent, and thus we need not concern ourselves with inconsistencies between the original and final judgments or with the internal inconsistencies in the original judgment. Since a trial court sitting without a jury may change its mind before a judgment becomes final, we hold that the trial court did not err when it changed its mind about causation and entered a final judgment different from its original causation findings.

**III.**

Negligence law in Tennessee has undergone a dramatic metamorphosis during the past decade. The most noted change came with the Tennessee Supreme Court's decision to replace the contributory negligence with a modified comparative fault system. *McIntyre v. Balentine,* 833 S.W.2d 52, 56 (Tenn. 1992). This change, however, was preceded by another significant development. One year earlier, the court altered the analytical framework of common-law negligence actions.

Prior to 1991, the prevailing view was that common-law negligence causes of action were made up of three component parts: (1) a duty of care owed by the defendant to the plaintiff, (2) conduct by the defendant breaching that duty, and (3) an injury that was proximately caused by the defendant's conduct. *Lindsey v. Miami Dev. Corp.,* 689 S.W.2d 856, 858 (Tenn. 1985); *Shouse v. Otis,* 224 Tenn. 1, 7, 448 S.W.2d 673, 676 (1969); *DeGlopper v. Nashville Ry. & Light Co.,* 123 Tenn. 633, 642-43, 134 S.W. 609, 611 (1911). In 1991 the supreme court redefined these components by separating the injury component from the causation component and by bifurcating causation into two separate components. Accordingly, common-law negligence causes of action are now understood to contain five elements; (1) a duty of care owed by the defendant to the plaintiff, (2) conduct by the defendant breaching that duty, (3) an injury or loss to the plaintiff, (4) causation in fact, and (5) proximate or legal cause. *McClenahan v. Cooley,* 806 S.W.2d 767, 774 (Tenn. 1991).

Causation in fact and legal cause are very different concepts, *Ridings v. Ralph M. Parsons Co.,* 914 S.W.2d 79, 83 (Tenn. 1996); *Kilpatrick v. Bryant,* 868 S.W.2d 594, 598 (Tenn. 1993), and distinguishing between them has been hailed by some as one of the most helpful of the recent breakthroughs in negligence jurisprudence. *See, e.g.,* 4 Fowler V. Harper et al., *The Law of Torts* § 20.2 n.1 (2d ed. 1986); Victor E. Schwartz, *Comparative Negligence* § 4.1, at 89 (3d ed. 1994). Causation in fact refers to the cause and effect relationship that must be established between the defendant's conduct and the plaintiff's loss before liability for that particular loss will be imposed. Joseph H. King, Jr., *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences,* 90 Yale L.J. 1353, 1353 (1981). On the other hand,

legal cause connotes a policy decision by the judiciary to deny liability for otherwise actionable conduct. *Bain v. Wells,* ___ S.W.2d ___, ___ (Tenn. 1997);[5] *George v. Alexander,* 931 S.W.2d 517, 521 (Tenn. 1996). It requires the courts to establish the boundary of legal liability, *Kilpatrick v. Bryant,* 868 S.W.2d at 598, using mixed considerations of logic, common sense, justice, policy, and precedent. *Smith v. Gore,* 728 S.W.2d 738, 749 (Tenn. 1987); *Lancaster v. Montesi,* 216 Tenn. 50, 56, 390 S.W.2d 217, 220 (1965).

The defendant's conduct must be a cause in fact of the plaintiff's loss before there can be liability under negligence or any other theory of liability. Harper, *supra,* § 22.16, at 400; Schwartz, *supra,* § 4-1(a), at 90. Thus, no negligence claim can succeed unless the plaintiff can first prove that the defendant's conduct was the cause in fact of the plaintiff's loss. *Lancaster v. Montesi,* 216 Tenn. at 55, 390 S.W.2d at 220 (stating that "[i]f . . . defendant's conduct . . . was not a factor in causing plaintiff's damage, that ends the matter."); *Drewry v. County of Obion,* 619 S.W.2d 397, 398 (Tenn. Ct. App. 1981) (stating that "[p]roof of negligence without proof of causation is nothing."); *Carney v. Goodman,* 38 Tenn. App. 55, 61, 270 S.W.2d 572, 575 (1954). The inquiry is not a metaphysical one, but rather a common sense analysis of the facts that lay persons can undertake as competently as the most experienced judges. Restatement (Second) of Torts § 431 cmt. a (1965); Harper, *supra,* § 20.2, at 91; W. Page Keeton, *Prosser and Keeton on the Law of Torts,* § 41, at 264 (5th ed. 1984).

Tennessee's courts have consistently recognized that conduct cannot be a cause in fact of an injury when the injury would have occurred even if the conduct had not taken place. *Shouse v. Otis,* 224 Tenn. at 8, 448 S.W.2d at 676; *Fairbanks, Morse & Co. v. Gambill,* 142 Tenn. 633, 643-44, 222 S.W. 5, 8 (1920); *Deming v. Merchants' Cotton-Press & Storage Co.,* 90 Tenn. 306, 353, 17 S.W. 89, 99 (1891). This principle has come to be known as the "but for" test. As articulated by Dean Prosser, the "but for" test states that

> [t]he defendant's conduct is a cause in fact of the event
> if the event would not have occurred but for that
> conduct; conversely, the defendant's conduct is not a

[5]*Bain v. Wells,* App. No. 01S01-9603-CV-00049, 1997 WL 9056, at *8 (Tenn. Jan. 13, 1997) (For Publication).

cause of the event, if the event would have occurred without it.

Keeton, *supra,* § 41, at 266. The supreme court picked up on the "but for" terminology in 1950 and has used it ever since. *Wood v. Newman, Hayes & Dixon Ins. Agency,* 905 S.W.2d 559, 562 (Tenn. 1995) (referring to the "but for" test as classic language of causation in fact); *Kilpatrick v. Bryant*, 868 S.W.2d at 598; *Watson v. Borg-Warner Corp.,* 190 Tenn. 209, 215, 228 S.W.2d 1011, 1013 (1950).

In most circumstances, the "but for" test effectively identifies conduct that should be excluded as a cause in fact of an injury. Harper, *supra,* § 20.2, at 92; Keeton, *supra,* § 41, at 266. However, it has proved to be less than satisfactory in several circumstances, particularly when two independent causes concur to produce an injury that either of them alone could have produced. Keeton, *supra,* § 41, at 266-67. In recent years, another test - the "substantial factor" test - has taken its place beside the "but for" test to address these circumstances. The most common formulation of this test appearing in the Restatement (Second) of Torts states:

> The actor's negligent conduct is a legal cause of harm to another if
> (a) his conduct is a substantial factor in bringing about the harm, and
> (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in harm.

Restatement (Second) of Torts § 431 (1965). This court invoked the restatement's version of the "substantial factor" test as early as 1948. *Waller v. Skeleton,* 31 Tenn. App. 103, 115, 212 S.W.2d 690, 696 (1948). The supreme court followed suit seventeen years later, *Lancaster v. Montesi,* 216 Tenn. at 57, 390 S.W.2d at 221, and has now incorporated it in its three-part test for determining proximate or legal causation. *McClenahan v. Cooley,* 806 S.W.2d at 775.

The "substantial factor" test has not turned out to be the hoped for panacea for all causation in fact problems. Over the years, it has taken on several distinct and conflicting meanings. Harper, *supra,* § 20.6, at 180-82; Keeton, *supra,* § 41, at 43-45 (Supp. 1988). While several jurisdictions have adopted the "substantial

factor" test as their sole test for determining causation in fact, *see, e.g., Mitchell v. Gonzales,* 819 P.2d 872, 878-79 (Cal. 1991); *Knodle v. Waikiki Grand Hotel,* 742 P.2d 377, 386-87 (Haw. 1987); *Busko v. DeFilippo,* 294 A.2d 510, 512 (Conn. 1972), others have declined to jettison the "but for" test. *See, e.g., Culver v. Bennett,* 588 A.2d 1094, 1098-99 (Del. 1991); *Fussell v. St. Clair,* 818 P.2d 295, 299 (Idaho 1991).

Rather than supplanting the "but for" test, the "substantial factor" test in Restatement (Second) of Torts 3431 actually retains the "but for" causation principle as an essential part of the causation in fact analysis. King, *supra,* 90 Yale L.J. at 1356. Restatement (Second) of Torts § 432(1) (1965) explains that

> Except as stated in Subsection (2),[6] the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.

Thus, the "substantial factor" test, like the "but for" test, incorporates the concept that conduct cannot be a cause in fact of an injury if the injury would still have occurred even if the conduct had never taken place.

Both the "but for" test and the "substantial factor" test recognize that conduct must be a "necessary antecedent" to an injury in order to be considered a cause in fact of the injury. *See* Restatement (Second) 432, cmt. a. Choosing between the two tests would not be outcome-determinative in this case, and thus we perceive no practical benefit in joining the academic debate concerning the relative merits and shortcomings of these two tests. The tests are compatible, and in many cases, the "but for" test provides the trier of fact with appropriate guidance for deciding causation in fact questions. Since the "substantial factor" test is not always superior to the "but for" test, there is reason to require its use in every case. We prefer to leave this matter to the trial courts who must select the legal principles most applicable to the facts of each particular case.

**IV.**

_____

[6]Restatement (Second) of Torts § 432(2) applies to circumstances where two independent causes produced an injury that either of them alone could have produced.

The intervening cause doctrine is a common-law liability shifting device. It provides that a negligent actor will be relieved from liability when a new, independent and unforseen cause intervenes to produce a result that could not have been foreseen. *Glenn v. Conner,* 533 S.W.2d 297, 301-02 (Tenn. 1976); *Brown v. City of Kingsport,* 711 S.W.2d 607, 609 (Tenn. Ct. App. 1986). The doctrine only applies when (1) the intervening act was sufficient by itself to cause the injury, *Underwood v. Waterslides of Mid-America, Inc.,* 823 S.W.2d 171, 180 (Tenn. Ct. App. 1991), (2) the intervening act was not reasonably foreseeable by the negligent actor, *Evridge v. American Honda Motor Co.,* 685 S.W.2d 632, 635 (Tenn. 1985), and (3) the intervening act was not a normal response to the original negligent actor's conduct. *McClenahan v. Cooley,* 806 S.W.2d at 775; *Solomon v. Hall,* 767 S.W.2d 158, 161 (Tenn. Ct. App. 1988). The customary explanation of the doctrine is that an independent, intervening cause "breaks the chain of legal causation between the original actor's conduct and the eventual injury. *McClung v. Delta Square Ltd. Partnership,* ___ S.W.2d ___, ___ (Tenn. 1996);[7] *Haynes v. Hamilton County,* 883 S.W.2d 606, 612 (Tenn. 1994); *Ford Motor Co. v. Wagoner,* 183 Tenn. 392, 401, 192 S.W.2d 840, 844 (1946).

The separation of causation in fact from legal causation and the adoption of the comparative fault doctrine have obscured the role and significance of the intervening cause doctrine. Intervening cause appears to relate more to legal causation than to causation in fact because it does not come into play until after causation in fact has been established. *Doe v. Linder Constr. Co.,* 845 S.W.2d 173, 184 (Tenn. 1992); Keeton, *supra,* § 44, at 301. The doctrine also appears to have survived the adoption of comparative fault even though other similar liability shifting doctrines such as last clear chance, implied assumption of the risk, and remote contributory negligence have been subsumed into comparative fault.[8] While other jurisdictions have concluded otherwise,[9] the supreme court has stated

---

[7]*McClung v. Delta Square Ltd. Partnership*, App. No. 02S01-9512-CV-00122, 1996 WL 617553, at *12-13 (Tenn. Oct. 28, 1996) (For Publication).

[8]*Eaton v. McLain,* 891 S.W.2d 587, 592 (Tenn. 1994).

[9]*L.K.I. Holdings, Inc. v. Tyner,* 658 N.E.2d 111, 119-20 (Ind. Ct. App. 1995) (holding that the comparison of fault inherent in the common-law doctrine of intervening cause has been incorporated into the comparative fault system); *see also Dodd v. Varady,* 799 S.W.2d 216, 220 (Tenn. Ct. App. 1990) (stating that the doctrines of intervening negligence and last clear chance (continued...)

-10-

that proximate cause and intervening cause remain jury questions in the comparative fault decision-making process. *Haynes v. Hamilton County,* 883 S.W.2d at 612.

Decision-making in a comparative fault proceeding will be more efficient and reliable if causation-in-fact issues are resolved at an early stage. Thus, causation-in-fact issues should be resolved before taking up legal cause issues or allocating fault. By structuring the process in this manner, the trier of fact will decide all causation-in-fact issues before determining whether a defendant who might otherwise be liable should be relieved from liability because of the independent and unforeseen conduct of another.

## V.

We must decide first whether the evidence supports the trial court's conclusion that the manner in which South Central Bell erected and maintained its lines and poles was a cause in fact of Ms. Owen's injuries. If the answer to this question is no, Waste Management, Inc. cannot recover from South Central Bell under any theory of liability. Only if South Central Bell's conduct was a cause in fact of Ms. Owen's injuries will we have to determine whether South Central Bell should be excused from liability because an unknown driver severed the guy wire on one of the telephone poles.

Causation in fact is an all-or-nothing proposition. Keeton, *supra,* § 67, at 474. While there may be different degrees of liability or fault, specific conduct is either a cause in fact, or it is not. Accordingly, plaintiffs have the burden of introducing evidence that affords a reasonable basis for concluding that it is more likely than not that the defendant's conduct was a cause in fact of their injury. *Cook v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 939 (Tenn. 1994).

Waste Management, Inc. had the burden of proving that the manner in which South Central Bell installed its lines and poles was a cause in fact of Ms.

---

[9](...continued)
are no longer appropriate under admiralty's proportional fault system).

Owen's injuries. It presented some proof that the lines were originally strung several inches lower than the height required by the National Electric Safety Code. However, the proof is undisputed that trucks similar to the one involved in this incident had passed under these very lines without incident for sixteen years until a vehicle driven by an unknown driver hit and severed the guy wire on one of the poles. It is also undisputed that the lines fell to below thirteen feet three inches only after the guy wire was severed.

Waste Management, Inc. has asserted throughout this case that the lines would not have fallen below thirteen feet three inches had they been originally installed at eighteen feet or higher as required by the National Electric Safety Code. However, its expert engineer candidly conceded that he could not determine the height of the lines before the guy wire was severed and, more importantly, how far the lines fell when the guy wire was severed. He could not state that the lines would not have fallen below thirteen feet three inches had they been installed four to six inches higher in 1971, and the record contains no other evidence supporting such a conclusion.

Waste Management, Inc. has not proved that its truck would not have snagged the telephone lines had South Central Bell originally installed the lines at a proper height. Even if the lines had been installed several inches higher, it is more likely than not that Waste Management, Inc.'s truck would have snagged the lines after the unknown driver severed the guy wire. Thus, even if Waste Management, Inc. proved that South Central Bell installed its lines contrary to the National Electrical Safety Code, it has not proved that the installation of the lines was a cause in fact of Ms. Owen's injuries. Without this proof, the trial court had no factual basis to conclude that South Central Bell's conduct was a cause in fact of Ms. Owen's injuries and, therefore, had no basis to allocate any fault to South Central Bell. It follows, therefore, that Waste Management, Inc. is not entitled to contribution from South Central Bell.

**VI.**

For the reasons stated herein, we vacate Waste Management, Inc.'s $27,114.47 judgment and remand the case to the trial court for the entry of a judgment in favor of South Central Bell and against Waste Management, Inc. for $485.53[10] and for whatever other proceedings may be required. We tax the costs of this appeal in equal proportions against South Central Bell Telephone Company and its surety and Waste Management, Inc. for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
BEN H. CANTRELL, JUDGE

---

[10]This is the same as the trial court's original judgment. We have not modified it because South Central Bell has not appealed from the trial court's conclusion that it was ten percent at fault with regard to its property damage claim.