IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 16, 2001 Session

## JESSIE LEE ANTHONY v. MELBOURNE C. HOLLAND

**Direct Appeal from the Circuit Court for Madison County**
**No. C97-102     Donald H. Allen, Judge**

_____

**No. W2001-00745-COA-R3-CV - Filed November 29, 2001**

_____

This is an appeal from a judgment by the trial court, sitting without a jury, that the defendant's negligence was not the proximate cause of plaintiff's injuries. We hold that the evidence does not preponderate against the factual findings of the trial court. We therefore affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

David Hardee, Jackson, Tennessee, for the appellant, Jessie Lee Anthony.

Bradford D. Box, Jackson, Tennessee, for the appellee, Melbourne C. Holland.

### OPINION

On June 20, 1996, Jessie Lee Anthony ("Mr. Anthony") was stopped at a red light and was hit from behind by a car operated by Melbourne V. Holland ("Mr. Holland"). After the collision, Mr. Anthony was treated at the hospital for pain in his back and leg. He began chiropractic treatment on July 9, 1996, and received additional treatment at the emergency room on August 12 and 13, 1996. He was referred to Dr. Hugh Glenn Barnett on August 22, 1996. Dr. Barnett diagnosed a herniated disc at L-5 and performed back surgery on September 16, 1996. Mr. Anthony missed three and one-half weeks of work before returning to work at A.M. Cox & Sons Sawmill, where he had worked for 28 years, since the age of 18. He developed recurrent back and leg pain and missed additional work, for a total of fifty-six lost days and lost earnings of $3,136.00. Mr. Anthony continued to experience pain and an April 23, 1997, CAT scan showed subtle problems at the L5 level. Mr. Anthony was then sent to Dr. Frank Jordan for epidural injections. Dr. Barnett testified that Mr. Anthony suffered a permanent impairment of 10% and that he will remain in pain indefinitely as a result of the herniated disc.

Mr. Anthony filed suit on March 11, 1997. At a nonjury trial on April 26, 2000, Mr. Holland stipulated to liability, but denied that the low impact collision of June 20, 1996, was the cause in fact of Mr. Anthony's back injury. Mr. Holland traces Mr. Anthony's history of back problems to 28 years of physical labor at the sawmill, including a 1988 work related back injury which resulted in a worker's compensation claim. Mr. Anthony was treated for this injury by Dr. Barnett. Mr. Anthony was also involved in a car accident in 1994, although the evidence is contradictory as to whether he experienced back pain following that accident. In 1994 and 1995, Mr. Anthony made several visits to the emergency room, complaining of back pain. On May 11, 1995, Mr. Anthony returned to Dr. Barnett, again complaining of back pain, but no x-rays or CAT scans were performed due to cost and the lack of insurance.

Mr. Anthony admits to prior back trouble, but claims that the preponderance of evidence proves the collision caused the herniated disk at L5, or at least an aggravation of back injuries. As expert testimony, he offered into evidence testimony of Dr. Barnett, a neurosurgeon. Mr. Holland offered testimony of Dr. Eugene Appel, a trauma surgeon and mechanical engineer.

The trial court found that Mr. Anthony failed to prove his case by a preponderance of the evidence. Specifically, the court find that Mr. Anthony failed to show by a greater weight of evidence that the injuries alleged were proximately caused by the very low impact collision which occurred on June 20, 1996. Since Mr. Anthony failed to meet his burden of proof, judgment was entered for the defendant, Mr. Holland. This appeal followed.

### *Issue*

Whether the Plaintiff, Jessie Anthony, proved by a preponderance of the evidence that his injuries and damages were caused by the negligence of the Defendant, Melbourne Holland, who caused a rear-end collision with Mr. Anthony's vehicle?

### *Standard of Review*

This is a nonjury case, thus our standard of review is de novo upon the record with a presumption of correctness as to the trial court's findings of fact. Tenn. R. App. P. 13(d). Accordingly, we will not reverse the trial court's findings of fact unless the evidence preponderates otherwise or the trial court has committed an error of law. ***Roberts v. Robertson County Bd. of Ed.***, 692 S.W.2d 863, 865 (Tenn. Ct. App. 1985).

In an action for negligence, the plaintiff must prove five elements: (1) a duty of care owed to the plaintiff by the defendant; (2) conduct by the defendant constituting breach of that duty; (3) injury or loss to the plaintiff; (4) that the defendant's conduct was the cause in fact of the plaintiff's injury; (5) that the defendant's conduct was the proximate or legal cause of the injury. ***Waste Management, Inc. of Tennessee v. South Central Bell Telephone Co.***, 15 S.W.3d 425, 430 (Tenn. Ct. App. 1997). In this case, the only issue in controversy is that of causation. The plaintiff bears the burden of proving that the negligence of the defendant was the cause in fact and proximate cause of his injury. ***See id.*** at 433. Cause in fact requires a determination of the cause and effect

relationship between the defendant's breach of the duty of care and the plaintiff's injury. *Id*. at 430. A defendant's conduct is not the cause in fact of an injury if that injury would have occurred even without the defendant's conduct. *Id.* Cause in fact can also be found where the defendant's conduct is a "substantial factor" in bringing about an injury. *See id.* at 431. However, in order to be considered a cause in fact of an injury, the defendant's conduct must be shown to have been a "necessary antecedent" to the plaintiff's injury. *Id.* at 432.

In addition to establishing that the defendant's conduct was the cause in fact of his injury, the plaintiff must prove that his injuries were proximately caused by the defendant's conduct. *Roberts*, 692 S.W.2d at 871. In order to be the proximate cause of the plaintiff's injury, the defendant's conduct must have been the "procuring," "efficient," or "predominant" cause of the injury. *Id*. The Tennessee Supreme Court describes proximate cause as: "[t]hat act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another which, if it had not happened, the injury would not have been inflicted." *Tennessee Trailways, Inc. v. Ervin*, 438 S.W.2d 733, 735 (Tenn. 1969). A finding of proximate cause requires a mixture of considerations of logic, common sense, justice, policy and precedent. *Waste Management*, 15 S.W.3d at 430.

The plaintiff has the burden of proving causation by a preponderance of the evidence. *See id*. If the plaintiff fails to prove causation by a preponderance of the evidence, then his action must fail. *See id.* If testimony in a lawsuit leaves a determinative fact unresolved, then the evidence does not preponderate. *See Reserve Life Ins. Co. v. Whittemore*, 442 S.W.2d 266, 275 (Tenn. Ct. App. 1969).

Medical testimony which presents mere speculation as to the cause of injury is not sufficient to establish proximate cause. *See Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861 (Tenn. 1985). A possibility of causation is not sufficient. *Id.* When the probabilities of causation are at best evenly balanced, the verdict must be for the defendant. *Id.* The plaintiff bears the burden of proving that it is more probable than not that his injuries were caused by the conduct of the defendant. *Id.* at 861-62. When expert testimony is presented that expresses the witness's professional judgment as to the most likely cause of injury among the possible causes, its weight is determined by the finder of fact. *Id*. at 862.

The expert testimony considered by the trial court and relied on by the parties in this case consists of the depositions of Dr. Barnett, the neurosurgeon who treated Mr. Anthony following the 1996 collision, and Dr. Appel, a trauma surgeon and mechanical engineer based in San Diego, California. Dr. Barnett testified that he had treated Anthony for back problems caused by a work related injury in 1988, when he found some abnormality to the L4 disk, but that there was no indication of a herniated L5 disk at that time. He saw Mr. Anthony for back pain again in May of 1995, after a six year absence. Mr. Anthony's next visit to Dr. Barnett was in August of 1996, after the June collision. Mr. Anthony complained of back and leg pain, and a myelographic CAT scan revealed a herniated disk at L5. Dr. Barnett performed surgery on September 16, 1996. Dr. Barnett testified that Mr. Anthony continues to complain of back and leg pain, and that he will continue to

have some pain indefinitely as a result of the herniated disk. Dr. Barnett assigned Anthony a 10 percent impairment rating to his body as a whole as a result of the herniated disk and surgery. He also recommended that Mr. Anthony not lift more than fifty pounds in order to avoid reinjury to his back.

Dr. Barnett testified that the history which Mr. Anthony had given him was that his back pain had become significantly worse following the collision. He stated, "Accepting all that at face value, one would certainly have to believe that some cause[] and effect [existed] between the accident and the development of the herniated disk at L5." Asked if the collision would be the likely cause, he replied, "Well, with that history and lacking any other history. Once again, that's not the only thing that could have caused it. He could have had many things happen to him, but those were not related to me."

Upon cross examination, Dr. Barnett testified that he had no direct knowledge of visits to the emergency room made by Mr. Anthony for back pain suffered between 1988 and 1996. He further testified that Mr. Anthony was complaining of pain in his right leg as early as 1988. When asked if any number of events could have caused the herniated disk absent the automobile collision, Dr. Barnett replied, "[Y]es. Many events could have triggered the herniated disk." When asked about the probability of a very low impact collision causing the herniated disk, Dr. Barnett emphasized that he was not an expert on collisions, but that "[o]ne would not normally think of a relatively minor accident as doing something like that."

Dr. Eugene Appel testified by telephonic deposition as to his biomechanical analysis of the collision and the likelihood of it causing Mr. Anthony's herniated disk.[1] After examining the accident reports and photos, in addition to Mr. Anthony's medical records, Dr. Appel testified that injury potential to the victim from a collision of this type is primarily soft tissue injury to the neck. He stated, "From a biomechanical point of view, the chance of injuring your low back from this kind of accident is very, very small." Dr. Appel also testified that in a rear-end collision with a stopped vehicle, the body does not move. Rather, it's the car that is pushed under him. The back, which is already against the back of the seat, does not move. It is the head that snaps backward, which can cause whiplash. Dr. Appel further testified that even considering Mr. Anthony's age and prior medical history, the chance of injury to the low back from this collision "is really, really small." He stated that he was surprised to see no complaints of neck pain, and that given Mr. Anthony's pre-existing condition, an accident of this impact "might have made his previous condition worse, but not in a significant manner."

Dr. Appel testified that the collision obviously made Mr. Anthony worse, but that he did not "think there's anyone in the world that can say how much this minor accident made the patient

---

[1]In his deposition, Dr. Appel described biomechanical analysis as "a look at a biological system, which in this case is the human being, and the forces, stresses, and movements of a human being in relation to mechanical force and stress [in this case, a car] . . . . It helps determine . . . what was caused by the accident and what wasn't, and how badly the patient could have been hurt."

worse." He further testified that Mr. Anthony could not have tolerated the several chiropractic treatments he received before seeing Dr. Barnett if his disk had been herniated, and that the disk probably ruptured six or seven weeks after the collision. Dr. Appel stated, "How much of the accident made the disc weaker so it could rupture, I don't think anybody can say."

Although both Dr. Barnett and Dr. Appel testified that the June 20, 1996, collision could have caused Mr. Anthony's disc to rupture, neither medical expert testified that such was more than a possibility. Upon reviewing all of the testimony, it is obvious to this Court that the collision might have triggered the herniated disc. However, as we noted above, this mere possibility does not suffice to prove causation. We cannot determine from the record that Mr. Anthony would not have suffered a herniated disk absent the collision, or that the collision was the predominant factor in causing the disc to rupture, or even that it was a substantial factor. Since this determinative factor is left unresolved, the evidence does not preponderate in favor of Mr. Anthony, who bears the burden of proving causation.

In light of the foregoing, we hold that the evidence does not clearly preponderate against the trial court's findings of fact in this case. Accordingly, the judgment of the trial court is affirmed.

The costs of this appeal are taxed to the Appellant, Mr. Jessie Lee Anthony, and his surety, for which execution may levy if necessary.

_____
DAVID R. FARMER, JUDGE

-5-