NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0534n.06

Case Nos. 22-5003/5005

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 21, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| KAREY GORDON ARNOLD, as Parent and Next of Kin of deceased, CHASITY R. WALKER, et al. (22-5003); TABITHA CAMPOS, as Parent and Next of Kin of A.C., a minor, deceased, et al. (22-5005), | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| UNITED STATES OF AMERICA | ) ) | OPINION |
| Defendant-Appellee. | ) ) | |

Before: COLE, CLAY, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** These consolidated appeals arise from the deaths of two individuals, Chasity Walker ("Walker") and minor A.C., following a vehicle accident with Ivan Henderson ("Henderson"), who, at all relevant times, was employed with the United States Navy. Karey Gordon Arnold and Allen Dale Walker, as parents and next of kin of Walker (collectively "Arnold"), and Tabitha Campos, individually, and as parent and next of kin of A.C. ("Campos"), brought negligence actions against the Government pursuant to the Federal Tort Claims Act ("FTCA"). The district court granted summary judgment to the Government, finding that Arnold and Campos failed to establish that Henderson was the proximate cause of their injuries. Arnold also appeals the denial of Arnold's motion to extend the time to produce expert testimony. For the reasons set forth below, we **AFFIRM** the grant of summary judgment to the Government, albeit

on different grounds than the district court. We also **AFFIRM** the district court's denial of Arnold's motion to extend the time to produce expert testimony.

**I.**

On the morning of October 26, 2018, Henderson was driving northbound on Riverside Drive in Jackson, Tennessee in a government-owned Ford Focus. Around the same time, Walker was driving southbound on Riverside Drive in her Nissan Versa with A.C. in the rear passenger seat. Walker lost control of her vehicle, which entered the northbound lane and collided with Henderson's vehicle. Both Walker and A.C. died as a result of the accident.

After the accident, no electronic data was retrieved from Walker's vehicle but the data recorder in Henderson's vehicle showed that he was traveling at 58.3 mph five seconds before impact and had slowed to 55 mph by the moment of impact. The posted speed limit on Riverside Drive is 40 mph. Thus, Henderson was driving well in excess of the speed limit.

At his deposition, Henderson testified that he regularly traveled on Riverside Drive before the accident and that he was aware of the speed limit. Riverside Drive is a two-lane roadway that Henderson described as "a windy country road that's pretty narrow[.]" (R. 83-7, PageID 590). Riverside Drive includes a bridge, both sides of which "are filled with patched holes." (*Id.* at 580).

Henderson claimed he first realized the accident was about to occur when he was about 50 to 60 feet away from entering the bridge. When he saw Walker's vehicle, "[i]t was inside the bridge already, right inside the guardrail, as it started to turn sideways, I believe." (*Id.* at 581). Henderson initially claimed that trees blocked his view as he entered the bridge, so he was not able to see oncoming vehicles, but he later testified that a person approaching the bridge from the direction in which he was traveling "can see not only across the bridge but can see oncoming traffic as it approaches the north of the bridge[.]" (*Id.* at 582, 593). Henderson testified that he applied

his brakes at the point of impact, but he took no other evasive action. The data downloaded from Henderson's vehicle did not indicate that the brakes were applied.

Because Walker and A.C. were deceased and could not testify about the accident, Campos and Arnold retained accident reconstruction experts to try to establish that Henderson caused Walker's and A.C.'s deaths. Campos's expert, Matthew Jackson ("Mr. Jackson"), explained his theories on what would have happened if Henderson had been traveling the speed limit in the five seconds before impact. Mr. Jackson opined that the "additional time and distance created by Mr. Henderson traveling the speed limit would have lowered impact speeds, reduced the magnitude of the Walker delta [V][1] to below 40 mph, and altered the force direction significantly and in a way favorable to the passenger of the Walker vehicle." (R. 83-2, PageID 484).

Arnold's expert, Jerry Elston ("Mr. Elston"), testified in his deposition that if Henderson had been traveling the speed limit, the energy transmitted in the collision would have been "significantly reduced," which would "lessen the chance of a serious injury and/or death[.]" (R. 76-3, PageID 377). Initially, Mr. Elston did not offer an opinion about the precise likelihood of injury or death, nor did he indicate that Henderson would have been able to stop before impact had he been traveling the speed limit. In fact, Mr. Elston testified that giving opinions about the likelihood of injury or death was outside his expertise as an accident reconstructionist, and when asked if he was testifying that Henderson would have been able to stop if he had been going 40 mph, he responded, "I'm not." (R. 89-2, PageID 751). After his deposition, Mr. Elston submitted an affidavit explaining that upon his review of Henderson's deposition testimony and observations of the accident site, Henderson could have stopped before the collision point or avoided the

---

[1] Delta V refers to a vehicle's change in velocity and was determined by Dr. Alfred Bowles "to be a statistically significant risk factor for injury risk." (R. 83-5, PageID 536–37).

collision if he had been traveling the speed limit. Further, Mr. Elston opined that "[t]he speed of Henderson's vehicle and his failure to take evasive measures was the primary cause [of] Ms. Walkers [sic] death." (R. 84-4, PageID 708).

The Government's accident reconstruction expert, David Brill ("Mr. Brill"), opined that even if Henderson had been traveling at the speed limit during the narrow window of time from when Henderson recognized Walker as a hazard to the time of the accident, the collision still would have occurred and would have resulted in "more of a direct right side impact to [Walker's car] which would have increased the depth of intrusion into the rear of the passenger compartment." (R. 83-9, PageID 621). The Government also retained Dr. Alfred Bowles ("Dr. Bowles") as an expert to evaluate the risk of fatality and serious injury against accident severity in side-impact collisions. Dr. Bowles testified that a restrained adult driver in a far-side crash with a delta V of 40 mph has a 50% chance of dying. Despite the limited data regarding "high speed lateral crashes for children in the three- to five-year-old range," (R. 83-10, PageID 646), Dr. Bowles opined that "[b]ecause of the child's size and anatomic considerations, it is reasonable to expect that both the injury risk and fatality risk for a child would be higher than that predicted for adults." (R. 83-5, PageID 537). Dr. Bowles ultimately concluded that although a reduction in Henderson's speed would "theoretically reduce crash energy and therefore theoretically reduce the potential for injury severity it cannot be concluded to a reasonable degree of certainty that the alternative crash would have altered the expected injury outcome for [Walker]." (*Id.* at 540).

On September 3, 2019, Campos filed a complaint alleging negligence against the Government, William J. Milam, as administrator ad litem of Walker's estate, and Jessica Walker.[2] On October 25, 2019, Arnold filed a complaint against the Government alleging negligence and

---

[2] The claims against William J. Milam and Jessica Walker were dismissed with prejudice.

loss of consortium. In January 2020, the cases were consolidated before the district court. On April 5, 2021, the Government moved for summary judgment, arguing that Campos and Arnold had failed to establish a genuine dispute of material fact as to cause in fact and proximate cause. Shortly before the Government filed its motion, one of Arnold's lawyers passed away, which led Arnold's other attorney to seek to withdraw. Arnold's attorney responded to the Government's motion for summary judgment, after which his motion to withdraw was granted.

On October 14, 2021, Arnold's new counsel filed a supplemental response to the summary judgment motion. Relying on steering wheel data from Henderson's vehicle, Arnold presented a new theory suggesting it was Henderson (not Walker) who crossed the centerline into oncoming traffic. The Government replied arguing that because the accident reconstruction experts did not rely on the steering wheel data in forming their opinions, that data could not be used to create a genuine dispute of material fact. Thereafter, Arnold filed a motion to extend the time to produce expert witnesses and to bifurcate trial.

The district court assumed that Campos had established cause in fact for purposes of its summary judgment determination. The court ultimately found that the undisputed facts showed Henderson's speed was not the proximate cause of the accident and granted summary judgment to the Government on Campos's claims. In a separate order, the district court granted summary judgment to the Government on Arnold's claims for the same reason, denied Arnold's motion for an extension of time, and dismissed Arnold's motion to bifurcate as moot.

## II.

We review a district court's grant of summary judgment *de novo*. *See Thacker v. Ethicon, Inc.*, 47 F.4th 451, 458 (6th Cir. 2022). We view "the evidence in the light most favorable to the part[ies] opposing the motion." *Id.* at 458–59 (internal quotation marks and citation omitted).

Under *de novo* review of a motion for summary judgment, we can affirm "on any grounds supported by the record, even if they are different from those relied upon by the district court." *Kennedy v. Superior Printing Co.*, 215 F.3d 650, 655 (6th Cir. 2000).

On appeal, Arnold and Campos challenge the district court's orders granting summary judgment to the Government on the ground that Henderson's speed was not the proximate cause of the collision. We find that the district court's grant of summary judgment to the Government was proper because the undisputed facts indicate that Henderson was not the cause in fact of Arnold's and Campos's deaths. Because Arnold and Campos have failed to establish a genuine factual dispute regarding cause in fact, we need not reach the issue of proximate cause.

Arnold and Campos brought their claims against the Government pursuant to the FTCA. The FTCA waives the Government's sovereign immunity and allows individuals to recover for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b)(1). "The liability of the United States in actions under the [FTCA] is governed by the law of the place where the alleged tort occurred." *Ward v. United States*, 838 F.2d 182, 184 (6th Cir. 1988) (citation omitted). Because the subject accident took place in Tennessee, Tennessee substantive law applies.

To succeed on a negligence claim under Tennessee law, a plaintiff "must prove the following essential elements: '(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause.'" *Cotten v. Wilson*, 576 S.W.3d 626, 637 (Tenn. 2019) (quoting *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009)). Cause in fact is the dispositive issue here.

Cause in fact "means that the injury or harm would not have occurred 'but for' the defendant's negligent conduct." *Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993) (citing *Caldwell v. Ford Motor Co.*, 619 S.W.2d 534, 543 (Tenn. Ct. App. 1981)). Tennessee has also adopted the "substantial factor" test, which states that an "'actor's negligent conduct is a legal cause of harm to another if (a) his conduct is a substantial factor in bringing about the harm, and (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in harm.'" *Waste Mgmt., Inc. of Tenn. v. S. Cent. Bell Tel. Co.*, 15 S.W.3d 425, 431 (Tenn. Ct. App. 1997) (quoting Restatement (Second) of Torts § 431 (1965)). "Rather than supplanting the 'but for' test, the 'substantial factor' test . . . actually retains the 'but for' causation principle as an essential part of the causation in fact analysis." *Id.* (citation omitted). Except when two independent causes produce an injury that either alone could have produced, "'the actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent.'" *Id.* (quoting Restatement (Second) of Torts § 432(1) (1965)).

Generally, cause in fact is a question for the jury "unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005) (citations omitted). To establish cause in fact, "plaintiffs have the burden of introducing evidence that affords a reasonable basis for concluding that it is more likely than not that the defendant's conduct was a cause in fact of their injury." *Waste Mgmt.*, 15 S.W.3d at 433.

The district court assumed, without deciding, that a disputed question of material fact existed as to cause in fact but did not address the issue based on its determination that the proximate cause issue was dispositive. Even so, we can, and do, affirm the district court's grant of summary

judgment to the Government based on our conclusion that there is no genuine dispute regarding cause in fact. *See Kennedy*, 215 F.3d at 655.

It is undisputed that Henderson owed a duty to others not to operate his vehicle in excess of the speed limit and that he breached that duty by operating his vehicle 15-20 mph in excess of the speed limit. *See McCracken v. City of Millington*, 1999 WL 142391, at *5 (Tenn. Ct. App. Mar. 17, 1999) ("The purpose of imposing a speed limit is to prevent injuries resulting from motor vehicle accidents."). Thus, to establish the Government's liability, Arnold and Campos were required to prove that Henderson's speeding caused Walker's and A.C.'s deaths. In other words, would Walker and A.C. have died if Henderson was traveling 40 mph at the time of the accident? Arnold and Campos have failed to adduce evidence for a reasonable factfinder to answer this question in the affirmative.

The Government argues that Arnold and Campos cannot prove cause in fact regardless of the test applied because they did not elicit expert testimony establishing that Walker and A.C. would have survived the accident without Henderson's alleged negligent conduct. Neither Campos nor Arnold squarely address cause in fact in their appellate briefs, and, although the cases were consolidated and the parties make similar arguments, each responded to the Government's summary judgment motion differently. Campos argued that she provided sufficient expert testimony to prove cause in fact under the "substantial factor" test, while Arnold merely stated that a "serious dispute of material facts" exists regarding the impact of Henderson's alleged negligence, and, in a supplemental response, alluded to "new" steering wheel data that they claim the court should consider. We agree with the Government—regardless of the test applied,[3] Arnold and

---

[3] Indeed, "[t]he [substantial factor and but for] tests are compatible, and in many cases, the 'but for' test provides the trier of fact with appropriate guidance for deciding causation in fact questions." *Waste Mgmt., Inc.*, 15 S.W.3d at 432.

Campos have failed to elicit competent evidence that Walker and A.C. would have survived the accident but for Henderson's negligent conduct.

First, Campos relies on: (1) Mr. Jackson's testimony that had Henderson been traveling the speed limit, the delta V for the accident would have been less than 40 mph, and (2) data from the National Automotive Sampling System Crash Data System ("NASS-CDS"), which was included in Dr. Bowles's report and showed that the risk of fatality is less than 50% when the delta V is less than 40 mph. Thus, according to Campos, the risk of death would be less than 50% had Henderson been traveling the speed limit.

Although Mr. Jackson indicated that the delta V would have been less than 40 mph had Henderson been going the speed limit, this alone is insufficient to show that Henderson's alleged negligence was a cause in fact of A.C.'s death. Mr. Jackson did not opine on the likelihood of death or injury to A.C. (or Walker), specifically testifying that such an opinion was outside his area of expertise. Additionally, Dr. Bowles did not rely solely on the NASS-CDS data in reaching his conclusions and even clarified that the cited NASS-CDS data was based on real-world crash data and independent of the accident at issue here. Dr. Bowles opined that this was especially true considering that much of the data was for adult drivers and not child passengers, though Dr. Bowles noted that "[b]ecause of the child's size and anatomic considerations, it is reasonable to expect that both the injury risk and fatality risk for a child would be higher than that predicted for adults."

---

As was the case in *Waste Management, Inc.*, "[c]hoosing between the two tests would not be outcome-determinative in this case[.]" *See id.* Campos does not allege that two independent causes occurred, each sufficient to cause A.C.'s death. Rather, Campos claims that "[i]t is clear that the speed of Mr. Henderson's vehicle was a substantial factor in the damage caused in this crash." But the substantial factor test says that an "actor's negligent conduct is not a substantial factor in bringing about harm to another if the harm would have been sustained even if the actor had not been negligent." *Id.* at 431. Here, Henderson cannot be a substantial factor in bringing about A.C.'s death if A.C. would have died even if Henderson had been driving at the speed limit. As explained above, Campos did not produce evidence to create a genuine factual dispute as to this conclusion.

(R. 83-5, PageID 537). Regarding the NASS-CDS data, Dr. Bowles testified, "[t]hat's not my opinion. My opinion is not a [NASS-CDS] chart." (R. 83-10, PageID 645). This evidence simply does not address A.C.'s (or Walker's) chances of surviving the accident absent Henderson's alleged negligence.

In the absence of expert opinion supporting her cause in fact theory, Campos offered her own interpretation of the data underlying the experts' opinions, contending that there was a greater than 50% chance of survival in a scenario where Henderson was traveling the speed limit. This interpretation, however, is insufficient to show cause in fact. At the summary judgment stage, a party must produce evidence that is capable of being presented in a form that would be admissible. *See* Fed. R. Civ. P. 56(c). Under Federal Rules of Evidence 701 and 702, opinion testimony based on scientific, technical, or specialized knowledge must come from an expert witness. Campos is not an expert, and her purported interpretation of the data is inadmissible. Furthermore, the expert opinions of Mr. Jackson and Dr. Bowles do not support Campos's conclusion. The Government's expert, Dr. Bowles, stated that it could not be concluded to a reasonable degree of certainty whether the expected injury outcome for Walker or A.C. would have been different had Henderson been driving the speed limit. And Mr. Jackson did not opine on the issue because it was not within his area of expertise.

Second, Campos relies on Mr. Jackson's testimony that had Henderson been traveling the speed limit, Walker's vehicle would have been "oriented in such a way that any collision with Mr. Henderson would have been to the rear of her vehicle rather than to the side." (R. 83-2, PageID 483). At this stage, we view the evidence in the light most favorable to Campos, but even doing so, Mr. Jackson's testimony does not show that A.C. more likely than not would have survived the crash had Henderson hit the rear of the vehicle. Even though Campos cites Dr. Bowles's expert

testimony that a rear impact is better than a side impact, this conclusion was not specific to the subject accident. Without more, Dr. Bowles's testimony is insufficient to show that A.C. would have survived a rear-impact collision, and as such, Campos's argument is too speculative to survive summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (finding that the party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts"). The same is true of Campos's argument that had Henderson not been speeding he would have had more time to react and mitigate the severity of a collision with Walker's vehicle. *See id.*

The only evidence that supports Arnold and Campos's contentions that Walker and A.C. would have survived the accident had Henderson been traveling the speed limit is Mr. Elston's post-deposition affidavit, in which he testified that "[t]he speed of Henderson's vehicle and his failure to take evasive measures was the primary cause [of] Ms. Walkers [sic] death." (R. 84-4, PageID 707–08). Mr. Elston also stated in his affidavit that Henderson could have stopped if he was traveling at 40 mph. Arnold submitted Mr. Elston's post-deposition affidavit to the district court in response to the Government's summary judgment motion. The problem with the affidavit is that it directly contradicts Mr. Elston's prior deposition testimony. Mr. Elston testified in his deposition that he could not give an opinion about the likelihood of injury or death because it was not within his expertise. He further conceded during his deposition that he could not say that Henderson would have been able to stop his vehicle if he had been traveling 40 mph. As we have made clear, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citation omitted); *see Webb v. United States*, 789 F.3d 647, 660–61 (6th Cir. 2015) ("Th[e sham affidavit] doctrine prevents a party from

submitting a new affidavit to manufacture a factual dispute by contradicting an *earlier* testimony." (citation omitted)). Moreover, because the affidavit contains testimony that is outside of Mr. Elston's area of expertise, it is nothing more than a lay opinion based on scientific, technical, or specialized knowledge that we must reject. *See* Fed. R. Evid. 701–02. Thus, we decline to consider Mr. Elston's affidavit testimony.

Arnold's attempt to rely on steering wheel data to show that Henderson caused the accident is also unavailing. According to Arnold, this "new" data was discovered in the report of the Tennessee Highway Patrol Critical Incident Response Team, which indicates that Henderson's steering wheel angles ranged from -9.1 degrees to -11.9 degrees from 1.5 seconds to 1.0 second before the collision. Arnold argues that "[t]he steering wheel angle of [Henderson's] vehicle reveals that he was making a significant right turn 1.5 seconds before the impact" and that "the only way that [Henderson] could have made such a turn without driving off the road all together [sic] was because he must have been in the left lane, [Walker's] lane of travel, 1.5 seconds prior to the collision," causing Walker to swerve out of the way, lose control of her vehicle, and crash.

The Highway Patrol report itself does not reach such a conclusion, nor do any of the experts, all of whom relied on the report in some way to support their opinions. Indeed, Arnold admits as much, noting that "[t]he issues of speed and braking have already been examined and opined upon by all the parties' causation expert witnesses. However, the steering wheel angle of [Henderson's] vehicle in the seconds prior to the collision has not." Interpretation of the steering wheel data requires scientific, technical, or specialized knowledge to be conveyed through expert testimony, *see* Fed. R. Evid. 701–02, and because Arnold offers no expert testimony to support their theory, such evidence is inadmissible.

"To make out a *genuine* issue of material fact, plaintiff must present significant probative evidence tending to support her version of the facts, *evidence* on which a reasonable [factfinder] could return a verdict for her." *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)) (emphasis in original). Based on the summary judgment record, Arnold and Campos have not produced evidence showing that Walker and A.C. would have survived if Henderson had not been speeding. As a result, Arnold and Campos have failed to show that a reasonable factfinder could find that Henderson was the cause in fact of their injuries.

**III.**

Lastly, Arnold challenges the district court's denial of Arnold's motion to extend the time to produce experts. We review the denial of Arnold's motion for abuse of discretion. *See Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010).

A motion to extend time to produce experts may be granted only upon a showing of "good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Government argues that Arnold waived this argument by failing to develop it on appeal. We have upheld the denial of a motion to amend expert disclosures because the plaintiff "neither cite[d] the good-cause standard nor argue[d] that he me[t] it" and "also never claim[ed] that the district court abused its discretion or attempt[ed] to explain why that is so." *Baum v. Metro Restoration Servs., Inc.*, 764 F. App'x 543, 546–47 (6th Cir. 2019).

Arnold's reference to the motion to extend the time to produce experts on appeal is limited, indicating only the desire for "more time from the Court to gather critical evidence that should be considered by the trier of fact in making a just determination of which party was truly at fault for Chasity Walker's death." But Arnold's brief does not mention the good cause standard, let alone

argue that the standard was met.  Additionally, Arnold does not argue that the district court abused its discretion in denying the motion.  Thus, Arnold has waived this issue.  *See United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996))).

## IV.

For the foregoing reasons, we affirm.